IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOHERTY,

    Plaintiff,

v.

CITY OF ALAMEDA and CITY OF ALAMEDA HOUSING AND BUILDING CODE HEARING AND APPEALS BOARD,

    Defendants.

No. 09-4961-EDL

**ORDER GRANTING MOTION TO DISMISS CLAIM TWO OF SECOND AMENDED COMPLAINT WITH PREJUDICE**

Defendant City of Alameda, acting on behalf of itself and the City of Alameda Housing and Building Code Hearing and Appeals Board (collectively "Defendants"), has filed a Motion to Dismiss the second claim of Plaintiff's Second Amended Complaint ("SAC"). The Motion is made on grounds that Plaintiff's claim for violation of 42 U.S.C. § 1983 fails to state facts sufficient to state a Monell claim against the City. For the following reasons, the Court GRANTS Defendant's Motion to Dismiss with prejudice.

**I.    Background**

Plaintiff John Doherty is the owner of a 10-unit residential apartment building located at 1617 Central Avenue in Alameda, California (the "Property"). SAC ¶ 1. The Property is Mr. Doherty's permanent home and, as rental property, his livelihood. Id. The Property was originally built pre-1900 as a single family dwelling, but in 1945 the building was converted into a 10-unit building and it was in that form when Mr. Doherty purchased the Property in 1973. Id. ¶ 6.

From 1982 through 1986, Plaintiff and Defendant had a dispute over Plaintiff's desire to use plastic instead of metal pipes for the building's fire sprinklers. Plaintiff was ultimately given the option of installing metal pipes into his 10-unit building, or converting the building into a 2-unit

building. Plaintiff kept his building as a 10-unit building and installed metal pipes in 1986, and was thereafter issued a Certificate of Occupancy. Id. ¶¶ 8-12. In December 2003, Defendant "re-determined the Property as a duplex." Id. ¶ 13. Defendant then allegedly began harassing Plaintiff for the next six years with wrongful demands to "return" the property into a duplex. Id. ¶¶ 14-15.

In January 2004, Defendant and the Alameda Fire Department conducted code enforcement inspections of the Property. On February 12, 2004, they issued a notice of violation of the Alameda Building Code that the building was a duplex and gave Plaintiff 180 days to convert the building to two units. Id. ¶ 16. On February 18, Plaintiff received a second notice to abate, this time from the Fire Department, alleging eleven fire code violations. Id. ¶ 17. Plaintiff subsequently challenged this determination by letter. Id. ¶ 18. After re-inspection, the number of violations was reduced to four. Id. ¶ 19. On April 29, 2004, the Building Department issued a notice of five new violations (including that the Property be restored to a duplex) plus the four Fire Department violations. Id. ¶¶ 21-22. The Department also "red-tagged" the Property, declaring it unsafe to occupy, which caused two tenants to vacate. Id. ¶ 22. On appeal, Plaintiff provided evidence of compliance as to each of the nine violations except for the demand to "return" the building to a duplex, but his appeal was unsuccessful. Id. ¶¶ 23-27. On June 9, 2005, Plaintiff was incorrectly notified that he was not entitled to an appeal "pursuant to AMC § 13-10.7," and this alleged error purportedly deprived Plaintiff of his right to appeal. Id. ¶ 28.

In June 2005, police officers entered Plaintiff's property and posted a 24-hour notice of inspection warrant for vehicle abatement. The officers then cut a chain and entered the backyard. Plaintiff protested and was arrested for violating the Unsafe to Occupy Red-Tag Order. Id. ¶¶ 29-30. He was detained for one and a half hours and then released, but was not provided with a copy of the arrest report. Id. In September 2005, Plaintiff received an administrative citation of $250.00 for failure to obtain permits to convert the building to a duplex. He paid the fine and unsuccessfully appealed. Id. ¶¶ 31-33.

In June 2006, Plaintiff submitted a claim for damages to Defendant based on inverse condemnation, malicious prosecution, abuse of process and negligent infliction of emotional distress. Id. ¶ 34. In July 2006, the former city attorney who prosecuted the 1985 action against

2

Plaintiff prepared a declaration reiterating his and Plaintiff's contention that the Property was built as a single family dwelling and converted to a 10-unit building in 1945. Id. ¶ 35. Despite this testimony, Defendant continued to take the position that the Property was a duplex. Id.

In March, 2007, Plaintiff received a Notice of Inspection Warrant listing twelve violations, including the allegation that the building had been converted from a duplex into a 10-unit structure without the required permits and various code section violations that lacked explanation. Id. ¶ 36-38. According to Plaintiff, "most of these alleged violations" had been corrected, and Plaintiff supplied evidence of the corrections in 2005. Id. ¶ 38. On April 10, 2007, Defendant Building and Fire Department Officials and the Alameda Police Department conducted an inspection. According to the FAC, the warrant was obtained with "questionable cause," the court had no record of its issuance, proof of service or return, and Defendant exceeded the scope of the warrant as it excluded entry into the tenant-occupied units and the backyard,. Id. ¶ 36, 39. Following the inspection, Defendant posted a Notice and Order of three violations, including that the building lacked the required permits to have more than two units. Id. ¶ 41. The Notice and Order required that tenants vacate the building within 30 days and the building be converted back to a duplex. Id.

Plaintiff appealed this Notice and Order before Hearing Officer Rapposelli and presented evidence that the Property had been a 10-unit structure since 1945 and that he had previously remedied the alleged defects. Id. ¶ 42-44. During this process, Plaintiff requested that Ms. Rapposelli recuse herself because, according to Plaintiff, "she lacked the legal education necessary to perform this function," but Ms. Rapposelli refused to recuse herself. Id. On September 10, 2007, Ms. Rapposelli denied the appeal and upheld prior administrative rulings that the Property was a duplex. Id. ¶ 46. Plaintiff thereafter appealed this decision to Defendant's Housing and Building Code Hearing and Appeals Board, claiming that Ms. Rapposelli's decision ignored material facts and that her "acts and/or omissions proximately caused the violation of Plaintiff's Substantive and Procedural Due Process Rights." Id. ¶ 47. On September 27, 2007, Plaintiff discovered a record created by the Building Department in December 2003 "changing the subject property to 2 units," which meant that the Property was improperly excluded from the list of properties requiring annual inspections in violation of the California Fire Code. Id. ¶¶ 48, 70. A final appeal hearing was held

in February 2008, during which Plaintiff presented documentary evidence and testimony that the building was not a duplex. Id. 20:17-21:3. However, Plaintiff's appeal was denied, and Ms. Rapposelli's decision finding unprotected wiring, a disconnected gas stove, and that the building was a duplex, was upheld on March 11, 2008. Id. ¶ 73.

On April 28, 2008, Plaintiff filed his state court complaint (subsequently amended and removed to this Court) alleging inverse condemnation and negligent infliction of emotional distress. Id. ¶ 80. On April 30, 2008, Defendant issued an Order To Vacate with a compliance date of June 1, 2008. Id. Plaintiff also filed a Writ of Mandamus in state court to appeal the March 11, 2008 decision, and in that action sought a stay of the Order To Vacate. Id. ¶ 74. The state court found that a stay was unnecessary "as Defendants cannot enforce the Board's decision until September 11, 2008." Id. ¶ 75, 81. On May 28, 2008, Defendant posted another Order To Vacate with a compliance date of June 4, 2008. Id. ¶ 82. In October 2008, Plaintiff's attorney notified Defendant of his intent to enter the Property, but this request was denied and counsel was threatened with contempt of court. Id. ¶ 84.

In August 2008, Plaintiff received the administrative record from Defendant, and lodged it in the Mandamus action though he believed the record was missing facts and evidence. Id. ¶ 76. In March 2009, the court rendered a decision in the Mandamus action, holding that Defendant was judicially estopped from arguing that the Property is a duplex or from asserting that position in the underlying administrative process. See Def.'s Request For Judicial Notice, Ex. 1 at p. 6; see also Ex. 2 (April 13, 2009 Judgment Grating Peremptory Writ of Administrative Mandamus). The court did not expressly rule on the propriety of the code enforcement action and denied Plaintiff's due process claims. Id. at ¶¶ 7-8. In light of this Order, Defendant filed a Return on the Writ attaching revised resolutions, taking out reference to the "duplex" issue but still finding multiple code violations. Id. ¶ 86; Def.'s Request For Judicial Notice, Ex. 3. Plaintiff's objection to the return was overruled. See id. at Exs. 4-6.

In April 2009, the California state court denied Defendant's Motion for Judgment on the Pleadings in the inverse condemnation/negligent infliction of emotional distress action, finding in part that Plaintiff had exhausted his administrative remedies and stated a claim for inverse

4

1  condemnation.  FAC ¶¶ 6, 7; see also Pl.'s Request For Judicial Notice, Ex. 2.  In September 2009,
2  Plaintiff amended the state court complaint to state claims for inverse condemnation, §1983 due
3  process violations, and forcible entry.  Based on the addition of a federal claim, Defendant removed
4  the case to this Court in October 2009 and promptly filed a Motion to Dismiss.  This Court
5  previously granted in part and denied in part Defendant's motion to dismiss the FAC, and allowed
6  Plaintiff leave to amend the second claim for violation of his due process rights under 42 U.S.C. §
7  1983.

**II.    The Parties' Requests to Take Judicial Notice of Documents Attached To Their Briefs**

Both parties have filed Requests For Judicial Notice and attached various exhibits that they request the Court consider in deciding the Motion to Dismiss.  On a motion to dismiss, a court normally may not look to matters beyond the complaint without converting the motion into one for summary judgment.  See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991). There are two exceptions to this rule: (1) a court may take judicial notice of material which is either submitted as part of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Here, the parties request judicial notice of certain state and federal court decisions and documents which appear to have been filed in state court, relate to these proceedings, and are referenced in the SAC.  See Defendant's Request For Judicial Notice Exs. 1-6; Plaintiff's Request For Judicial Notice Ex. 1, 4-5.  These documents are matter of public record, and/or are incorporated by reference in the SAC, and neither parties questions the authenticity of the other's submission.  These documents are therefore appropriate for judicial notice.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (stating that the incorporation by reference doctrine permits the court to consider documents central to the allegations in the complaint and whose authenticity no party questions, but which are not attached to the complaint).

Defendant opposes Plaintiff's Request for Judicial Notice of Exhibits 2 and 3.  Exhibit 2 appears to be one page of a multipage court document and there is no way to know what it is and it is not capable of ready determination.  Exhibit 3 appears to be a 1986 application for an electrical

5

1  permit, but it is unclear whether the document is in the public record and its authenticity is
2  questioned. Plaintiff has made no showing that this information is a matter of public record or
3  otherwise judicially noticeable. Therefore, these two documents are not appropriate for judicial
4  notice. Further, the documents are irrelevant to the Court's ruling on the Motion to Dismiss and
5  therefore the Court need not notice them. See Plevy v. Taggerty, 38 F. Supp. 2d 816, 820-21 (C.D.
6  Cal. 1998).

### III. LEGAL STANDARD

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

### IV. ANALYSIS

Defendant moves to dismiss Plaintiff's second claim for substantive and procedural due process violations under 42 U.S.C. § 1983 because the FAC does not allege a constitutional violation by a policymaker as defined by California law. See Motion at 6 (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1997)). Defendant also argues that Plaintiff has not set

6

1  forth facts showing a direct causal link between any alleged policy or custom and any alleged
2  constitutional deprivation. Finally, Defendant argues that Plaintiff's allegations relating to incidents
3  that occurred before September 30, 2007 (two years before he brought this claim) are time-barred.

4  Generally, a city or county may not be held vicariously liable for the unconstitutional acts of its
5  employees under the theory of respondeat superior. Board of the County Comm'rs of Bryan County,
6  Oklahoma v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. Instead, "it is when
7  execution of a government's policy or custom, whether made by its lawmakers or by those whose
8  edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government
9  as an entity is responsible under § 1983." Monell, 436 U.S. at 694. There are three ways to show an
10 affirmative policy or practice of a municipality: (1) by showing "a longstanding practice or custom
11 which constitutes the 'standard operating procedure' of the local government entity;" (2) "by
12 showing that the decision-making official was, as a matter of state law, a final policymaking
13 authority whose edicts or acts may fairly be said to represent official policy in the area of decision;"
14 or (3) "by showing that an official with final policymaking authority either delegated that authority
15 to, or ratified the decision of, a subordinate." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th
16 Cir. 2005) (quoting Ulrich v. City and County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002)).
17 "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability
18 and must demonstrate a direct causal link between the municipal action and the deprivation of
19 federal rights." Bd. of County Commissioners of Brown County, Oklahoma v. Brown, 520 U.S.
20 397, 404 (1996).

21 Defendant contends that Plaintiff's SAC does not adequately allege that the Building Code
22 Hearing and Appeals Board is an authorized policymaker responsible for making final policy
23 decisions on behalf of the City of Alameda. The SAC alleges that the Board "is a hearing board
24 responsible for making final administrative decisions regarding Hearing Officer decisions as per
25 Alameda Municipal Code (hereinafter 'AMC') 13-9.3(I) which states in part: 'Statement of Decision
26 and Administrative Order. The Board shall prepare a written Statement of Decision and
27 Administrative Order which shall contain findings of fact for each violation and the decision of the
28 Board. The decision of the Board is final." SAC ¶ 3. The SAC further alleges that the Board is the

7

1 final policymaking authority pursuant to Section 13-2(e) (112.4) (SAC ¶ 66), but this provision only
2 provides for appeals to the Board without granting it any policymaking authority.[1] Finally, the SAC
3 alleges that "the board denied Plaintiff his sought-after remedy, i.e., to acknowledge his evidence of
4 compliance with all Orders except to convert the building to a duplex," and that this decision
5 demonstrated an "official policy" of the municipality. SAC ¶¶ 66-67. Defendant argues that,
6 despite these conclusory allegations that the Board is a policymaker, the Board has no actual
7 policymaking authority and the Board's decisions are subject to superior court review. See Def.'s
8 RJN Exs. 1-6 (demonstrating superior court review of the Board decision in question).

9 Plaintiff opposes the motion on the basis that the Board is a final policymaking body for
10 Alameda. He cites City of St. Louis v. Praprotnik, 485 U.S. 112, 117 (1988) for the position that a
11 final policymaker is one whose decisions are final "in the sense that they are not subjected to de
12 novo review by higher ranking officials." He argues that because the Board's decisions are not
13 reviewed by another municipal entity, the Board is a policymaker as a matter of law. However, this
14 quotation from Praprotnik relates to the Supreme Court's recitation of the lower court's analysis,
15 which the Court held to be the incorrect standard for determining who is a policymaker. Instead, the
16 Court held that the identification of policymaking officials is a legal question of state law, and
17 policymaking authority may be granted directly by a legislative enactment or delegated by an
18 official who possesses such authority. Id. at 124-25.

19 Other than the conclusory allegations explained above, nothing in the SAC affirmatively shows
20 that state law gives the Board the authority to establish city policy or perform any legislative or
21 policymaking function. Instead the SAC shows that the Board determines compliance with code
22 sections enacted by the City Council. Thus, Plaintiff fails to state a claim for municipal liability
23 based on a final policymaker's decision. Plaintiff also briefly argues that there was some
24 unspecified "official policy" of refusing to acknowledge completed repairs. Opp. at 9 (citing SAC

---

[1] Section 112.4 reflects an amendment to the California Building Code, and provides that: "Any person adversely affected by any written orders, decisions or determinations made by the Building Official relative to the application and interpretation of the Building Code, Plumbing Code, Mechanical Code, Electrical Code and Fire Code or any other Alameda building regulations may appeal to the Housing and Building Code Hearing and Appeals Board. Such appeal shall be filed no later than ten (10) days following the date of the written decision by filing with the Planning and Building Department an appeal form specifying the basis of the appeal."

8

¶¶ 66-68).  However, the SAC provides no factual allegations regarding any alleged municipal "policy."   Defendant's motion to dismiss the second claim is GRANTED based on these pleading failures.  Therefore the Court need not reach the issues of whether the SAC adequately alleges a causal connection between any alleged constitutional deprivation and the Board's action, or whether Plaintiff's pre-September 30, 2007 allegations are time-barred (although the Court concludes that they are barred and Plaintiff has failed to alleged the facts necessary for equitable estoppel or tolling).  Because Plaintiff has already been granted ample opportunity to amend claim two previously and he has failed to adequately do so, and because any amendment would likely be futile or contradict earlier pleadings, the second claim is DISMISSED WITH PREJUDICE.

Dated: March 30, 2010

*/s/ Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge