John M. Doherty

4701 San Leandro St.

Oakland, CA  94601

510-261-0515

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. DOHERTY )<br><br>  Plaintiff / Petitioner )<br><br>  VS. )<br><br>CITY OF ALAMEDA; CITY OF ALAMEDA )<br>HOUSING AND BUILDING CODE )<br>HEARING AND APPEALS BOARD; and )<br>DOES 1 - 100 )<br><br>  Defendants / Respondents )<br>  _____ ) | Case No.: C 09-04961 EDL<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO FILE AN ATTORNEY'S LIEN** |

## INTRODUCTION

On May 2, 2010, Plaintiff's former attorney, Lee Grant, Esq. filed a motion to file an attorney's lien in the above referenced case.  Plaintiff respectfully opposes the motion.  Plaintiff entered into a contingency agreement with Attorney Grant in August, 2008 for representation in his lawsuit against the City of Alameda ("City") regarding Plaintiff's property at 1617 Central Ave., Alameda, CA.  As required by paragraph seven (7) of that agreement, Plaintiff deposited $250.00 with Attorney Grant.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff entered into an eight (8) page contingency fee agreement with Attorney Grant based on Attorney Grant's representation of himself as a civil rights attorney with both California

Superior court and federal litigation experience.  Based upon Attorney Grant's presentation, Plaintiff expected comprehensive legal representation and services not dissimilar to those that would be provided from an hourly fee agreement.  Plaintiff thought that such things as case strategies, case management, and timely filing of documents would be provided by Attorney Grant.

### 1.  Responsibility of the Parties Clause

Paragraph 3 of the agreement states:

"Attorney will provide those legal services reasonably required to represent Client in prosecuting the claims described in Paragraph 2 and will take reasonable steps to keep Client informed of progress and developments, and to respond promptly to inquiries and communications.  Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of any information and developments which may come to Client's attention, to abide by this Agreement, to pay Attorney's bills for costs on time, and to keep Attorney advised of Client's address, telephone number and whereabouts.  Client agrees to appear at all legal proceedings when Attorney deems it necessary, and generally to cooperate fully with Attorney in all matters related to the preparation and presentation of Client's claims."

Contrary to the agreement, there were several instances where the legal representation provided by Attorney Grant failed to be reasonable:

A.  On January 21, 2009, a hearing was held in state court on a motion for preliminary injunction and temporary restraining order against the City.  The motion was granted in part and Judge Keller ordered the City attorney and Attorney Grant to present a Proposed Order to him containing the terms under which Plaintiff would access his property.  Re-activating the property's 23-head sprinkler system was one of the items for which the Plaintiff sought access.  Despite the Judge's order, Attorney Grant did not follow up and approach the City with a proposed order and, as a result, access to the property remains an issue to this day.

B.  On May 16, 2008, Plaintiff, represented by Attorney Holtz, filed a petition for an administrative writ.  Attorney Grant was not involved in any part of this Petition. On April 13, 2009, judgment was entered by Judge Roesch granting Plaintiff's Writ of Administrative Mandamus against the City:  "In its Statement of Decision, the Court found that it is an abuse of discretion for the City to base an administrative decision on a fact or a position when the City is judicially estopped from asserting that fact or position, and that the City is judicially estopped from asserting that Petitioner's property is a duplex on account of the City's successful assertions in the 1985 administrative proceedings and in the 1985 judicial proceeding that the Property is not a duplex. Moreover, the Court determined that the City's prior position regarding this Property was not taken due to mistake or ignorance."

The Plaintiff and Attorney Grant agreed that it was now appropriate to prepare and file a First Amended Complaint.  It was not until September 18, 2009, five months later, that Attorney Grant filed the First Amended Complaint.  By this time the City had scheduled a motion for summary judgment to which Attorney Grant never prepared opposition papers.  Plaintiff then realized that the case was in jeopardy.  The hearing date (November 23, 2009) for the First Amended Complaint was after the hearing date (October 7, 2009) on the MSJ and that action was needed via an exparte application for an order shortening time on the FAC was critical to the survival of his case.  Plaintiff was forced to approach Attorney Holtz to prepare the exparte application package and appear at the hearings on September 23, 2009 and September 30, 2009.  Attorney Grant was not involved in preparing the papers nor was he present in person or via CourtCall at either hearing.  At the second hearing the City stipulated to filing the First Amended Complaint and Judge Keller deemed the MSJ moot.

C.  On October 12, 2009, Plaintiff independently researched and prepared an offer to compromise to the City.  Plaintiff presented the completed document to Attorney

Grant who agreed with the approach and signed the document.  Attorney Grant did not take any action to follow up with the City on the offer to compromise. (There was no response to the offer from the City.)  The City removed the case to federal court the following week, on October 19, 2009.

D.  On March 30, 2010, a hearing was held on the City's motion to dismiss.  After the hearing, Plaintiff raised questions regarding alterations Attorney Grant had made to the March 23, 2010 joint case management statement that were made without Plaintiff's knowledge and which were contrary to Plaintiff's wishes.  Plaintiff and Attorney Grant then had a contentious discussion where Plaintiff questioned several aspects of Attorney Grant's handling of the case.   Later that same day this Court granted a motion to dismiss Plaintiff's 42 USC 1983 cause of action.

E.  On April 9, 2010, Attorney Grant filed a motion for reconsideration, which was denied on April 14, 2010.  Plaintiff had no knowledge of Attorney Grant's intention to prepare and file a motion for reconsideration.

These failures to provide legal services as per the contingency fee agreement were clear indicators that something in the attorney-client relationship was not right.  These instances also represent times during the case where the Plaintiff thought that Attorney Grant's inactions were a prelude to his withdrawal, leaving Plaintiff without representation.

On April 14, 2010, Attorney Grant gave Plaintiff his notice of intention to withdraw and later that same day, Plaintiff responded that he would cooperate with the notice of withdrawal. Eighteen days later, on May 2, 2010, Attorney Grant filed his notice of withdrawal with this Court.  Not knowing if Attorney Grant would follow through, Plaintiff filed a motion to remove counsel.  In his motion, Plaintiff noted his request to Attorney Grant for a copy of his file. Attorney Grant has not provided same.

**2.  Discharge and Withdrawal Clause**

The contingency fee agreement appears to be based on the California State Bar Association's contingency template modified with Attorney Grant's additions and deletions. Paragraph 11 of the agreement states in part:

"Notwithstanding Attorney's withdrawal or Client's notice of discharge, and without regard to the reasons for the withdrawal or discharge, Client will remain obligated to pay Attorney for all costs incurred prior to the termination and, in the event that there is any net recovery obtained by Client after conclusion of Attorney's services, Client remains obligated to pay Attorney for the reasonable value of all services rendered from the effective date of this Agreement to the date of discharge."

Attorney Grant has never given any indication that he has lost faith in the merits of Plaintiff's case and Attorney Grant's withdrawal was permissive within the meaning of the State Bar of California Rules of Professional Conduct, rule 3-700(c).

The California Court, Fourth District, Division Three had this to say about the justifiability of permissive withdrawal in *Rus, Miliband & Smith v. Conkle & Olesten,* 113 Cal. App. 4th 656:

"As we said, the rules governing quantum meruit claims when the attorney withdraws are a little more complex than when the client fires the attorney. In a footnote relied on by the Rus firm, the *Falco* court left the door open a little to allow attorneys to recover fees even in cases where their withdrawal is under the permissive, as distinct from mandatory, provisions of the State Bar rules. (See *Falco, supra*, 188 Cal. App. 3d at p. 1016, fn. 12 ["We do not rule out the possibility of awarding fees to an attorney who withdraws under permissive withdrawal provisions of State Bar rules or statute."].) The court then hastened to add, however, that such cases required "heightened scrutiny." (*Ibid.* ["In cases involving permissive withdrawal it is within the discretion of the trial court, with heightened scrutiny consistent with the standards articulated here, to determine whether counsel's withdrawal was justified for the purpose of awarding fees."].)

Safe to say, then, that we do not have a simple binary test as would apply if the attorney were claiming an ethical mandate to withdraw (presumably under *Falco* if the attorney met the five elements, he or she would be entitled to proceed with the claim), but an even more fact-specific inquiry. The *Falco* court was thus willing to entertain the possibility that some

permissive withdrawals might qualify for a quantum meruit claim later. It is equally clear, though, that the particular permissive withdrawal in *Falco* did not qualify.

The reason behind the justifiability rule is instructive. The reason fees are barred, as explained in *Hensel* and *Falco*, is the inequity of allowing lawyers to capitalize on their own voluntary actions in leaving clients lawyerless. The *Hensel* court opened its opinion by characterizing the withdrawing attorney's behavior as bet hedging, and closed by analogizing the attorney to the man who kills his parents and then asks for mercy as an orphan. (See *Hensel, supra*, 155 Cal. App. 3d at pp. 564, 568-569.) *Falco* repeated the bet hedging metaphor, and pointed to an attorney's possible economic motivations in seeking to reduce his or her "own losses." (*Falco, supra*, 188 Cal. App. 3d at p. 1016.)

To those thoughts let us add this gloss: To allow an attorney under a contingency fee agreement to withdraw without compulsion and still seek fees from any future recovery is to shift the time, effort and risk of obtaining the recovery (economists would refer to these things as the "costs" of obtaining recovery) from the attorney, who originally agreed to bear those particular costs in the first place, to the client. The withdrawing attorney gets a free ride as to many of the headaches of litigation which he or she otherwise would have had to endure: answering the client's phone calls, showing up for depositions, responding to discovery, fending off summary judgment motions, preparing for trial, fending off in limine motions, picking a jury, fending off motions for nonsuit, judgment notwithstanding the verdict and new trial if he or she does win, and then, at the end of it all, protecting the fruits of victory by responding to an appeal. It is a very tough row which a contingency fee attorney originally agrees to hoe. Thus it is unassailably unfair to allow him or her to escape that labor absent the most compelling of permissive reasons--reasons that, as *Falco* indicated, must pass heightened scrutiny."

In light of the *Rus* case discussion, Plaintiff requests that this Court take into account the justifiability of Attorney Grant's withdrawal.

### 3.  Lien Clause

Paragraph 13 on page 7 of the contingency fee agreement has, at its conclusion, space for the client and the attorney to initial the paragraph.

"_____ (Client Initial Here)        _____ (Attorney Initial Here)"

Plaintiff notes for this Court that, contrary to the page 7 provided by Attorney Grant, Plaintiff's copy of the contingency fee agreement does not contain Attorney Grant's initials in the space provided.

The Plaintiff is not aware of any fees or costs pending as he has not received any billing statements as per Paragraph 8 (Periodic Billing Statements) of the contingency fee agreement.

Additionally, Plaintiff asserts that paragraph 13 on a lien is applicable to a situation where an attorney is discharged and not, as is the case here, where an attorney has withdrawn. The contingency fee agreement is silent regarding liens in the case of permissive withdrawal.

**CONCLUSION**

For the reasons stated above, Plaintiff asks this Court to review the reasonable value of the legal services rendered.  Given that:

an opportunity to access Plaintiff's property was missed;

that there was an unreasonable delay in the filing of the First Amended Complaint;

that it was the Plaintiff who initiated settlement via an offer to compromise;

that Attorney Grant made alterations to the CMC statement contrary to Plaintiff's wishes;

that a motion for reconsideration was filed without Plaintiff's knowledge; and

that Attorney Grant provided only pages 1, 7 and 8 of the contingency fee

agreement to  this Court; – Plaintiff respectfully requests that this Court consider the justifiability principals of the *Falco* and *Rus* cases and not impose a lien.


Dated: June 21, 2010                    _____

                                        John M. Doherty, pro se Plaintiff

PLAINTIFF'S OPPOSITION TO MOTION TO FILE AN ATTORNEY'S LIEN