IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOHERTY,

    Plaintiff,

    v.

CITY OF ALAMEDA and CITY OF ALAMEDA HOUSING AND BUILDING CODE HEARING AND APPEALS BOARD,

    Defendants.

No. 09-4961-EDL

**ORDER GRANTING MOTION TO FILE ATTORNEY'S LIEN (DKT. NO. 47); GRANTING IN PART AND DENYING IN PART MOTION TO SEAL (DKT. NO. 70)**

Plaintiff John Doherty's former attorney, Lee Grant, filed a motion for leave to file an attorney's lien in May 2010. Dkt. No. 47. After the motion was briefed, this portion of the case was stayed due to Plaintiff's voluntary bankruptcy petition. Upon notification that the bankruptcy petition had been dismissed, the Court re-set this motion for hearing and allowed supplemental briefing. Having considered the briefing and the oral argument of Mr. Grant and Mr. Doherty, the Court hereby GRANTS the motion for leave to file an attorney's lien. Mr. Grant's motion to file his reply is GRANTED IN PART AND DENIED IN PART.

**I.    Procedural Background**

This is an inverse condemnation case brought by Plaintiff John Doherty against the City of Alameda and its Housing and Building Code Hearing and Appeals Board based on allegations that Defendants acted illegally and unreasonably in enforcing certain public safety regulations against him in connection with a multi-unit residential building that is his permanent home and, as rental property, his livelihood. Plaintiff filed a state court complaint in April 2008 alleging inverse condemnation and negligent infliction of emotional distress, and the complaint was amended and removed to this Court where all but the inverse condemnation claim were dismissed.

Plaintiff was originally represented in this action by attorneys Lee Grant and Edward Holtz. On April 27, 2010, Plaintiff informed the Court by letter that his attorneys had notified him that they intended to withdraw but had not filed a motion to withdraw. Dkt. 44. On April 30, Mr. Holtz filed a motion to withdraw. Dkt. No. 49. On May 2, Mr. Grant filed a motion to withdraw and a motion for an attorney's lien to recover costs and fees. Dkt. Nos. 46, 47. On May 3, Mr. Doherty filed his own "motion to remove counsel," stating that he intended to seek new counsel but would proceed *pro se* in the interim. Dkt. No. On May 6, the Court granted Plaintiffs' attorneys' motions to withdraw and Plaintiff's motion to remove counsel, and allowed Plaintiff to proceed *pro se* and use the Court's electronic filing system. Dkt. No. 52.

## II.    Terms of the Attorney-Client Contingency Fee Agreement

In August 2008, Plaintiff and attorney Lee Grant entered into an "Attorney-Client Contingency Fee Agreement." Dkt. No. 63-1. The Agreement provided for contingency fees of 33 1/3% to 40 %, but "[i]n the event of Attorney's discharge or withdrawal as provided in Paragraph 11, Client agrees that, upon payment of the settlement, arbitration award or judgment in client's favor in this matter, Attorney shall be entitled to be paid by Client a reasonable fee for the legal services provided." Id. ¶ 4 (listing six factors to be considered in determining reasonable amount).

The Agreement further provides:

> 11. DISCHARGE AND WITHDRAWAL: Client may discharge Attorney at any time, upon written notice to attorney. Attorney may withdraw from representation of Client (a) with Client's consent, (b) upon court approval . . . Notwithstanding Attorney's withdrawal or Client's notice of discharge and without regard to the reasons for the withdrawal or discharge, Client will remain obligated to pay Attorney for costs incurred prior to the termination and, in the event that there is an [sic] net recovery obtained by Client after conclusion of Attorney's services, Client remains obligated to pay Attorney for the reasonable value of all services rendered from the effective date of this Agreement to the date of discharge.
>
> ...
>
> 13. LIEN: Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs, or attorney's fees, at the conclusion of Attorney's services. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. The effect of such a lien is that the Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client even if Attorney have been discharged before the end of the case. Because a lien may affect Client's property rights, Client may seek the advice of an independent lawyer of Client's own choice before agreeing to such a lien. By

2

> initialing this paragraph, Client represents and agrees that Client has had reasonable opportunity to consult such an independent lawyer and... whether or not Client has chosen to consult such an independent lawyer...Client agrees that Attorney will have a lien as specified above.. (ellipses in original).

In addition to these provisions, the Agreement also provides for a $250.00 deposit to be held in trust (¶ 7), and for periodic billing statements to be issued (¶ 8).

### III. Legal Standard

Attorney's liens may be enforced in federal actions. See Venegas v. Skaggs, 867 F.2d 527, 531 (9th Cir. 1989). However, the validity of specific liens are analyzed under state law. Id. Generally, attorney's liens are a charge used to secure attorney fees and expenses incurred "out of proceeds of a prospective judgment." Fletcher v. Davis, 33 Cal. 4th 61, 66 (2004). In California, attorney's liens can only be created by a contract, and they are subject to the requirements of California Rule of Professional Conduct Rule 3-300. Id. at 66-67. To be a valid attorney's lien, Rule 3-300 requires that: "9A) [t]he transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should be reasonably have been understood by the client; and (B) [t]he client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advise and (C) [t]he client thereafter consents in writing to the terms of the transaction or the terms of the acquisition." Cal. Rules of Professional Conduct (2009). See Fletcher, 33 Cal. 4th 61, 66 (2004). In some limited circumstances, an attorney's lien can survive even if the attorney withdraws as counsel. See Estate of Falco, 188 Cal. App. 3d 1004 (1987).

### IV. Discussion

Mr. Grant's motion initially sought a lien on Mr. Doherty's real property in an unspecified amount for "legal services rendered and out-of-pocket costs paid" based on paragraphs 4, 11 and 13 of the Agreement. Dkt. No. 47. Mr. Grant later clarified that he is not seeking a lien on the property, but only on the proceeds from any recovery in this lawsuit to cover costs and reasonable fees. Reply at 11. Mr. Doherty opposes the motion on grounds that Mr. Grant voluntarily withdrew from the representation so the attorney is not entitled to any recovery of costs or fees, and the

3

1  attorney did not "provide those services reasonably required to represent" him as required by
2  paragraph 3 of the Agreement because he failed to act reasonably or follow through on at least four
3  occasions. In his reply,[1] Mr. Grant contends that he acted reasonably and was forced to withdraw
4  because Mr. Doherty was uncooperative, verbally abusive, obstructionist, failed to pay agreed-upon
5  costs and communicated primarily through his niece who said he was apprised of and agreed to Mr.
6  Grant's decisions.

### 1. Validity and Enforceability of the Lien

Though neither party primarily focuses on it, the threshold question is whether the contractual lien provision is valid and can be enforced by Mr. Grant after he withdraw.

#### a. Validity of the Lien

The Agreement between Mr. Grant and Plaintiff expressly creates a valid attorney's lien. In Fletcher, the California Supreme Court reiterated the ability to contract an attorney's lien in writing. Fletcher v. Davis, 33 Cal. 4th 61, 70 (2004). The lien meets the requirements of Rule 3-300 because the terms appear to be fair and reasonable, were fully disclosed in writing, Mr. Doherty was advised in writing that he could seek the advice of an independent lawyer and was given a reasonable opportunity to do so, and he consented to the lien by initialing that part of the Agreement.

#### b. Enforceability of the Lien

On approximately the same date, Mr. Grant filed a motion to withdraw and Mr. Doherty filed a motion to have him removed. Therefore, Mr. Grant and Mr. Doherty were in apparent agreement that the relationship should end and the Court issued an order granting both motions. However, Mr. Doherty now argues that Mr. Grant is not entitled to a lien because his withdrawal was "permissive" under Rule of Professional Conduct 3-700(C). See Estate of Falco, 188 Cal. App. 3d 1004, 1016-17 (1987) ("attorney's withdrawal in adherence to ethical mandates is justified, entitling counsel to recover attorney's fees in quantum meruit. . . . . We do not rule out the possibility of awarding fees to an attorney who withdraws under permissive withdrawal provisions of State Bar rules or statute. In cases involving permissive withdrawal it is within the discretion of the trial court, with

---

[1] Mr. Grant filed a motion to have his reply and exhibits filed under seal. See Dkt. No. 70. The request to seal the reply is GRANTED IN PART, but DENIED IN PART as to Exhibit 2 which appears to be a document already in the public record.

4

heightened scrutiny consistent with the standards articulated here, to determine whether counsel's withdrawal was justified for the purpose of awarding fees."); see also Rus, Milliband & Smith v. Conkle & Olesten, 113 Cal. App. 4th 656 (2003) (quantum meruit claims for attorneys fees following permissive withdrawal subject to "heightened scrutiny").

Mr. Grant counters that, although withdrawal was discussed, he continued trying to contact Mr. Doherty (through his niece) about the case, but Mr. Doherty ultimately demanded that he withdraw. He thus contends that he is entitled to a lien on costs and fees because his withdrawal was not really voluntary, and/or that he meets the heightened scrutiny standard required to award fees in the case of permissive withdrawal. It is a close question whether Mr. Grant was terminated or if he withdrew because he and Mr. Doherty filed almost simultaneous motions, and the Court granted both motions. Either way, the Court finds that a lien is appropriate under the facts of this case.

On the one hand, if Mr. Grant was terminated by Mr. Doherty, then a lien is appropriate under both the terms of the Agreement and the caselaw cited. On the other hand, if Mr. Grant withdrew, his withdrawl was "permissive" pursuant to Rule 3-700(C), but meets the heightened scrutiny analysis for cases of permissive withdrawal. In Falco, the appellate court affirmed a lower court's decision to deny fees following non-mandatory withdrawal because it found "no abuse of discretion in the trial court's implicit finding rejecting the contention that respondents' lack of cooperation justified appellants' withdrawal." 188 Cal. App. 3d at 1020. In Rus, Miliband & Smith, the court determined that there was not sufficient justification for the permissive withdrawal (which was opposed by the client) to award fees where there was not any clear lack of cooperation or breakdown in communications. 113 Cal. App. 4th at 675-76. In contrast, Plaintiff's lack of cooperation, including failing to communicate directly with his attorney and making unilateral court filings, justified withdrawal. The fact that Mr. Doherty did not oppose Mr. Grant's withdrawal, but instead filed his own motion to have counsel removed, supports to this conclusion.

For all of the foregoing reasons, the lien provision contained in the Agreement is valid and enforceable against Mr. Doherty, and that Mr. Grant is entitled to an attorneys' lien in the amount of his costs and reasonable fees.

**2.     Costs**

Mr. Doherty also contends Mr. Grant is not entitled to costs because he never received a billing statement from Mr. Grant and was not informed that any portion of his initial deposit has been used. The Court rejects this argument and finds that Mr. Doherty should be required to pay all costs reasonably incurred by Mr. Grant during the representation. The attorney's lien on Mr. Doherty's potential recovery should cover costs as well as reasonable fees.

**3.     Adequacy of Representation**

In addition to the issue of costs, the parties devote considerable attention to the adequacy of Mr. Grant's representation. The Court does not find that Mr. Grant's representation was so inadequate that he should be denied his reasonable fees on this basis.

**IT IS SO ORDERED.**

Dated: June 13, 2011


ELIZABETH D. LAPORTE
United States Magistrate Judge