Gregory M. Fox, State Bar No. 070876
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990

Janet C. Kern, State Bar No. 151887
Office of the City Attorney
2263 Santa Clara Ave., Room 280
Alameda, CA  94501
Telephone:  (510) 747-4750
Facsimile:  (510) 865-4028

Attorneys for Defendant/Counterclaimant
CITY OF ALAMEDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOHERTY,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ALAMEDA AND CITY OF ALAMEDA HOUSING AND BUILDING CODE HEARING AND APPEALS BOARD,<br><br>    Defendants.<br><br>CITY OF ALAMEDA,<br><br>    Counterclaimant,<br><br>v.<br><br>JOHN DOHERTY and Does 1- 15, inclusive,<br><br>    Counterclaim-Defendants. | Case No. CV09-4961 EDL<br><br>**DEFENDANT CITY OF ALAMEDA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br>**[FRCP RULE 56]**<br><br>Date:   May 29, 2012<br>Time:  9:00 a.m.<br>Courtroom E, 15th Floor, San Francisco<br>Magistrate Judge Elizabeth D. Laporte |

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................1

    A. Plaintiff's Action Is Barred By His Failure To Exhaust Administrative Remedies ............1

    B. Plaintiff Also Cannot Establish A Regulatory Taking Of His Property .............................6

    C. Plaintiff's Property Constitutes A Public Nuisance Per Se ...............................................10

III. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armistead v. City of Los Angeles*
    152 Cal.App.2d 319 (1957) ...................................................................................................13

*California Reduction Co. v. Sanitary Reduction Works*
    126 F.29 34-36 (9th Cir. 1903) .............................................................................................11

*Carson Harbor Village, Ltd. v. City of Carson*
    353 F.3d 824 (9th Cir. 2004) ..................................................................................................2

*City of Bakersfield v. Miller*
    64 Cal.2d 93 (1966) ........................................................................................................10, 11

*City of Costa Mesa v. Soffer*
    11 Cal.App.4th 378 (1992) ...................................................................................................13

*Connecticut v. Doehr*
    501 U.S. 1 (1991) ..................................................................................................................15

*County of Contra Costa v. Humore, Inc.*
    45 Cal.App.4th 1335 (1996) .................................................................................................15

*Dolan v. City of Tigard*
    512 U.S. 374 (1994) ..............................................................................................................15

*Flahaive v. City of Dana Point*
    72 Cal.App.4th 241 (1999) ...................................................................................................13

*Franks v. Delaware*
    438 U.S. 154 (1978) ..............................................................................................................15

*Golden Gate Water Ski Club v. County of Contra Costa*
    165 Cal.App.4th 249 (2008) ......................................................................................11, 12, 13

*Guggenheim v. City of Goleta*
    638 F.3d 1111 (9th Cir. 2010) ...........................................................................................7, 10

*Hadacheck v. Sebastian,* 239 U.S. 394 (1915) ...........................................................................10

*Harris v. County of Riverside*
    904 F.2d 497 (9th Cir. 1990) ................................................................................................15

*Leppo v. City of Petaluma*
    20 Cal.App.3d 711 (1971) ....................................................................................................12

*Lingle v. Chevron U.S.A., Inc.*
    544 U.S. 528 (2005) ................................................................................................................7

*Lowenstein v. City of Lafayette*
    103 Cal.App.4th 718 (2002) ...................................................................................................7

**TABLE OF AUTHORITIES: (continued)**                                                                  **Page(s)**

*Lucas v. South Carolina Coastal Council*
    505 U.S. 1003 (1992) .................................................................................................... 7, 10

*Palazzolo v. Rhode Island*
     533 U.S. 606, 631 (2001) .............................................................................................. 9, 10

*Patrick Media Group, Inc. v. California Coastal Com.*
    9 Cal.App.4th 592 (1992) ............................................................................................. 2, 3, 6

*Penn Central Transportation Co. v. City of New York*
    438 U.S. 104 (1978) ......................................................................................................... 7, 9

*People ex rel. Trutanich v. Joseph*
    204 Cal.App.4th 1512, 2012 WL 1004770 at *7 (2012) ............................................... 8, 11

*Regency Outdoor Advertising, Inc. v. City of Los Angeles*
    39 Cal.4th 507 (2006) ........................................................................................................ 7

*Rose v. City of Coalinga*
    190 Cal.App.3d 1627 (1987) ............................................................................................ 12

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*
    535 U.S. 302 (2002) ......................................................................................................... 7, 9

*Thain v. City of Palo Alto*
    207 Cal.App.2d 173 (1962) .............................................................................................. 15

*Tri-State Dev., Ltd. V. Johnson*
    160 F.3d 528 (9th Cir. 1998) ............................................................................................. 15

*United States v. Riverside Bayview Homes, Inc.*
    474 U.S. 121 (1985) ......................................................................................................... 7, 8

*Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*
    371 F.3d 1046 (9th Cir. 2004) ............................................................................................. 2

**Statutes**

Civ. Code, § 1940 ..................................................................................................................... 9

Civ. Code, § 1941.1 .................................................................................................................. 9

Civ. Code, § 3479 ................................................................................................................... 11

Code of Civ. Proc., § 1094.5 ............................................................................................. 2, 3, 5

Code Civ. Proc., § 1094.6 ......................................................................................................... 3

Gov. Code, § 38771 ................................................................................................................ 11

Health & Saf. Code, § 17985 .................................................................................................. 15

Health and Saf. Code, § 17992 ............................................................................................... 15

**TABLE OF AUTHORITIES: (continued)** **Page(s)**

**Other Authorities**

62 C.J.S. Municipal Corporations, § 281, (c)(4) ........................................................................... 15

Alameda Municipal Code, § 13-13 ............................................................................................... 15

Alameda Municipal Code, § 13-13.1 ........................................................................................ 8, 11

Alameda Municiapl Code, § 13-13.2 ............................................................................................ 12

Alameda Municipal Code, § 13-13.2.5 ......................................................................................... 12

Alameda Municipal Code, § 13-3.3 .............................................................................................. 12

Alameda Municipal Code, § 13-3.4 .............................................................................................. 12

McQuillin, Municipal Corporations, 3d ed. §24.71 ..................................................................... 15

## I.   INTRODUCTION

Plaintiff ignores that the designation of his property as a duplex or a 10-unit complex is entirely irrelevant, and he dedicates inordinate discussion to the duplex dispute to obfuscate the issues and his lack of evidence to support his inverse condemnation claim.  The undisputed evidence establishes that the CITY's findings that significant health and safety violations existed at plaintiff's property were not contingent on whether the property was designated a duplex or a 10-unit building. Plaintiff's property was a nuisance per se under Alameda Municipal Codes (AMC), which the CITY was authorized to abate. The evidence establishes that plaintiff admittedly made substantial modifications to the electrical wiring, gas plumbing and interior walls and structure throughout the property, without any permits, inspection or approval by the CITY.  The unpermitted work rendered the property unsafe and substandard as defined by the AMC, and a nuisance per se as decreed by AMC §§ 13-13.1-13-13.4.  **The unsafe and illegal conditions and nuisance per se existed regardless of whether the property was a duplex or 10-unit building**. Plaintiff's opposition is unsupported by *competent* evidence and misrepresents the evidence cited.  The CITY objects to plaintiffs' purported evidence consisting of unsupported conclusions and misstatements, inadmissible hearsay, and incompetent and irrelevant matter.  Plaintiff has no evidence to support his sole remaining inverse condemnation claim and summary judgment should be granted.[1]

## II.   ARGUMENT

### A.   Plaintiff's Action Is Barred By His Failure To Exhaust Administrative Remedies

Plaintiff's assertion that the superior court already ruled on the same exhaustion of remedies arguments raised herein and concluded that plaintiff exhausted his administrative remedies is plainly erroneous and unsupported by evidence.  First, the exhaustion argument raised in the superior court was narrowly limited to exhaustion of plaintiff's remedies as to the 2007 Notice and Order only.  (See City's Reply re Motion for Judgment on the Pleadings, 5:1-3, attached to Declaration of Gregory M. Fox as Exh. 1; First Amended Petition For Writ Of Administrative Mandate, RJN Exh. B.)  Second, and more significantly, **plaintiff's petition expressly was limited to the issue of whether the property**

---

[1]   For example, plaintiff relies on his own unverified interrogatory responses constituting nothing more than argument, inadmissible hearsay statements he attributes to CITY employees, factually unsupported assertions and improper legal conclusions and his own lay opinion on matters such as whether he sufficiently abated the violations on his property.  Plaintiff's assertions should be cautiously viewed.

**incorrectly was classified as a duplex**, and sought only to set aside the CITY's finding that the property was illegally converted from a duplex, and to have the property decreed a 10-unit apartment building. (RJN Exh. B.) The superior court's finding that plaintiff exhausted his administrative remedies was limited only to the CITY's 2007 determination that the property was illegally converted from a duplex. Plaintiff's argument that the court already ruled he exhausted his administrative remedies as to *all* the findings against him in the three separate Notices and Orders is incorrect and wholly unsupported by evidence. That he exhausted his administrative remedies as to the 2007 Notice and Order finding the property was illegally converted from a duplex is irrelevant to any issue herein.

Plaintiff ignores that significant health and safety violations existed **unrelated to whether the property was legally a 10-unit apartment, and that the property was not declared a nuisance or vacated because of the number of units.** The undisputed evidence establishes plaintiff failed to exhaust administrative remedies as to any of the numerous findings that health and safety code violations existed as identified in the 2004, 2007 or 2009 Notice and Order and his inverse condemnation claim is unripe.

Ripeness requires that "'The plaintiff must have obtained a final decision from the governmental authority charged with implementing the regulations and must have pursued compensation through state remedies unless doing so would be futile." (*Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura,* 371 F.3d 1046, 1052 (9th Cir. 2004), *citing Williamson v. County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985); *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826-827 (9th Cir. 2004).) In California, "Special procedural requirements apply where an inverse condemnation action is based upon a regulatory taking accomplished by a discretionary action of an administrative agency. In such cases, the proper procedure is to bring the inverse condemnation action **in conjunction with, or after, a petition for administrative mandamus, as defined in section 1094.5 of the Code of Civil Procedure**…" [Emphasis added.] (*Patrick Media Group, Inc. v. California Coastal Com.*, 9 Cal.App.4th 592, 607 (1992).) **"Failure to obtain judicial review of a discretionary administrative action by a petition for a writ of administrative mandate renders the administrative action <u>immune from collateral attack, either by inverse condemnation action or by any other action</u>."** [Emphasis added.] (*Id.* at 608.) "To allow parties to circumvent the system of review provided under section 1094.5 would … undermine the authority and integrity of the

hearing procedures which the administrative agencies are presently required to render. … [and] would be a waste of both administrative and judicial resources, and the administrative hearings would be nothing more than perfunctory gestures." (*Id.* at 613.)

It is <u>undisputed</u> that plaintiff never filed a writ petition challenging the health and safety violations specified in the Notice and Order dated April 29, 2004, April 18, 2007 or April 16, 2009, and thus he failed to exhaust the remedies available to him. Code of Civ. Proc. §1094.5 provided a procedure for review of the CITY's determination that health and safety code violations existed, and §1094.6 required plaintiff to file a petition for writ review within 90 days of a final decision. Plaintiff never availed himself of the available procedures to challenge the findings of health and safety code violations.

The April 29, 2004 Notice and Order specified significant amounts of illegal and improper electrical wiring, gas connections and construction creating more than two units, among numerous other violations. Plaintiff appealed the administrative citation, then refused to participate in the hearing and left before the hearing began after briefly appearing. The Hearing Officer found the modifications of the property were made unlawfully without permits, and he concluded plaintiff failed to exhaust his administrative remedies. (Cambra Decl. ¶ 4.) Plaintiff appealed Mr. Cambra's decision, which was denied by Commissioner Rausch on September 5, 2006 for failure to exhaust administrative remedies. (RJN Exh. B.) **Plaintiff failed to seek writ relief of Commissioner Rausch's adverse decision**.

The second Notice and Order dated April 18, 2007 again specified violations of significant amounts of illegal and improper electrical wiring, gas connections and plumbing and construction creating more than two units. **Plaintiff did not challenge the <u>health and safety violations</u> arising from the illegal and improper electrical wiring or illegal gas connections and plumbing**. Indeed, plaintiff specifically elected <u>not</u> to challenge the health and safety code violations when he filed a petition for writ of administrative mandate *only* on the issue of whether the property was a duplex or a 10-unit apartment complex. (RJN Exh. B.) The prayer for writ relief specifically sought an order:

> For a writ of mandate directing the City to set aside its order of April 18, 2007 stating that the Property was illegally converted from a duplex and for the Court to take such action that may be necessary to reflect such corrective action.
>
> To affirm this Court's judgment in the 1985 Alameda Superior Court Case #594716-6
>
> To decree that the property was, as the City maintained in 1982, converted to a 10-unit apartment house in 1945.

      To order Respondent to update any records that have not been updated with the correct number of units since 1945.

      To render a Statement of Decision on the trial court's findings.

Accordingly, on March 4, 2009, the superior court granted the petition for writ of administrative mandate <u>limited</u> to the issue of whether the property was a duplex and requiring the CITY to set aside the portion of its Resolution based upon the finding that the property was a duplex, set aside the hearing officer's finding that the property was a duplex and all other findings and determinations based on the notion the property is a duplex. (RJN Exhs. C and D.) The CITY complied with the writ requirements, eliminating reference to the property as a duplex and setting aside findings based upon the property being designated as a duplex. (RJN Exh. E.) **Nothing in the writ proceedings challenged or addressed the findings related to health and safety code violations**.

The CITY issued a Revised Notice and Order on April 16, 2009, again specifying violations of illegal and improper electrical wiring, gas plumbing and construction, without any reference to or limitation on the property as a duplex. **Plaintiff filed no petition for review of the 2009 findings**.

The significant health and safety code violations rendering the property unsafe and uninhabitable exist irrespective of whether the property is a duplex or 10-unit apartment building. The undisputed evidence shows the determination that the property is unsafe and uninhabitable was not contingent on the number of units in the property. **It is undisputed that plaintiff has never sought any administrative review of the findings that significant amounts of illegal and improper electrical wiring, gas plumbing and construction exists throughout the property.**

Plaintiff's writ petition challenging the CITY's designation of the property as a duplex and finding it was illegally converted to a 10-unit apartment is irrelevant to whether he exhausted his administrative remedies related to the health and safety violations, or any issue raised by this motion. The writ petition limited to the issue of classifying the property as a duplex did not afford the CITY notice that plaintiff disputed the findings of unsafe electrical wiring, gas plumbing or construction, nor any opportunity to explain its findings or application of the Alameda Municipal Codes. Consequently, the superior court's finding that plaintiff exhausted his administrative remedies related to the *duplex* issue is entirely irrelevant.

Plaintiff's argument that collateral estoppel bars the CITY's exhaustion argument or that it is an improper motion for reconsideration is meritless. Plaintiff's challenges to the CITY's Notices and Orders have all been limited to the issue of whether the property is restricted as a duplex or lawfully a 10-unit apartment. These unrelated challenges, including the writ petition filed in September 2008 on which Judge Keller's order relied, fail to address any issue related to the unpermitted, illegal and unsafe electrical wiring, gas plumbing or construction throughout the property. Collateral estoppel is inapplicable, and the instant motion does not seek reconsideration of the Superior Court's finding that plaintiff exhausted his administrative remedies regarding the duplex issue.

Plaintiff's arguments that he exhausted his administrative remedies because he took some steps to challenge the CITY's findings and he misunderstood the law and procedures regarding administrative remedies likewise are unavailing. That plaintiff may have appealed the CITY's decisions to a hearing officer, or contested the findings to the CITY's Building Inspector are insufficient to satisfy exhaustion requirements. Similarly, Mr. McFann's statement that *under the Alameda Municipal Codes* there was no further appeal procedure does not satisfy or excuse plaintiff's obligation to exhaust available remedies. Indeed, review of a municipality's final decision is precisely one of the functions of the writ procedure provided by § 1094.5. The CITY had no duty to advise plaintiff how to proceed or that judicial review was available, and ignorance of the law does not excuse his failure to exhaust administrative remedies.

Plaintiff's argument that the prior review procedures encompassed challenges to the findings of health and safety violations despite what he pled in his 2008 petition is unsupported by evidence. For example, his claim that he submitted evidence to Hearing Officer Rapposelli in June 2007 showing his compliance with all notices from the CITY and applicable codes is directly contradicted by his own deposition testimony. He repeatedly testified he never obtained any permits for the significant electrical, gas plumbing and construction work he performed, and it was never inspected or approved by the CITY. That plaintiff may have undertaken some unpermitted and unapproved work that *he* believed would remedy the problems identified by the CITY does not meet applicable code requirements. Presenting evidence of further unpermitted and unapproved work to Hearing Officer Rapposelli in no way establishes review of the CITY's underlying findings of health and safety violations, and plainly was insufficient to revive any challenge to the 2004 Notice and Order, which had long become final.

Plaintiff argues that, notwithstanding his expressly limited prayer for relief from the CITY's reference to the property as duplex, the writ petition before Judge Roesch should be interpreted to include challenges to health and safety issues because the condition of the property was described in the parties' briefs. The bases for and validity of the CITY's findings of health and safety code violations were not challenged by the petition, plaintiff sought no relief as to those findings, and the court issued no order addressing the violations. The CITY's findings thus remained undisturbed.[2] Plaintiff's opposition in fact recognizes "Judge Roesch did *not* address or rule on the issue of whether the purported violations constituted a public nuisance." (Opposition 11:23-24.) The writ petition plainly did not include any challenge the CITY's findings of health and safety violations.

Judge Keller's conclusion that plaintiff exhausted his administrative remedies as to the duplex issues in the petition designated as Alameda County Case No. RG08388057 does not excuse his failure to exhaust administrative remedies related to the health and safety violations. Plaintiff could not reasonably interpret Judge Keller's order as a finding he exhausted administrative remedies as to all issues related to the property, beyond the duplex issue specified in the petition, nor can he now reasonably claim that in reliance on Judge Keller's order he was led to believe he had satisfied all exhaustion requirements for any claim related to the property. Such claims are unsupported and specious.

The undisputed evidence establishes that the health and safety violations existed independently of whether the property was classified as a duplex, plaintiff has never challenged the findings of health and safety violations and the property was vacated because it was hazardous and unsafe, not because it was erroneously classified as a duplex. Plaintiff failed to exhaust his administrative remedies and the CITY's decision that the property contains significant health and safety code violations and is unsafe and uninhabitable is immune from collateral attack. (*Patrick Media Group, Inc.*, 9 Cal.App.4th at 608.)

**B.    Plaintiff Also Cannot Establish A Regulatory Taking Of His Property**

The undisputed evidence shows no regulatory taking. To establish inverse condemnation, the property owner must first establish the public entity has, in fact, taken his property. (*Regency Outdoor*

---

[2] Plaintiff misunderstands that the CITY's current position is not contrary to what was previously argued in its motion to dismiss. Judge Roesch's order in no way addressed the code violations, and was limited to ordering the CITY to refrain from future reference to the property as a duplex, as plaintiff specifically requested in his petition. The order thus left the health and safety code violation findings untouched and implicity affirmed.

6
DEFENDANT CITY OF ALAMEDA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Advertising, Inc. v. City of Los Angeles,* 39 Cal.4th 507, 516 (2006).) It has long been established that "orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings [and the like are] considered permissible exercises of the police power" and do not constitute compensable takings. (*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 335 (2002*).*) Similarly, there is no taking when government requires a person to obtain a permit before engaging in a certain use of his property, as the very existence of a permit system implies that permission may be granted." (*United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 126-127 (1985).) Plaintiff also must establish that the government activity was objectively unreasonable or not legally justified. (*Lowenstein v. City of Lafayette,* 103 Cal.App.4th 718, 728-729 (2002).)

When the government's actions have only a temporary effect, the action is analyzed as a regulatory taking under the *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) factors. (*Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010); *Lingle v. Chevron U.S.A., Inc*., 544 U.S. 528, 538 (2005).) The court examines (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the character of the governmental action. (*Id.*; *Lingle*, 544 U.S. at 538.)

The undisputed evidence here fails to establish any taking of plaintiff's property. First, the CITY's actions in vacating a residential building that is in imminent danger of catching fire and/or otherwise endangers the health and safety of its residents, and in temporarily restricting access thereto until such hazards are remediated, are clearly permissible and well-recognized reasonable exercises of the police power. Indeed, the Supreme Court repeatedly has recognized that "land-use regulation does not effect a taking if it 'substantially advances legitimate state interests'." (*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1024 (1992), *citing Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834 (1987).) Further, plaintiff only is temporarily prohibited from using his property until he remediates the hazardous conditions thereon, and remediation and the timeliness of repairs is within his control. The CITY's efforts to enforce compliance with the health, safety and fire regulations do not constitute a compensable taking. (*Tahoe-Sierra Pres. Council, Inc.,* 535 U.S. at 335.)

Plaintiff argues without support that vacating the property was not a valid exercise of the CITY's police power. He incorrectly asserts "there is a substantial factual dispute as to whether the Property

7

1  constituted a "public nuisance" in the first place" and whether the CITY followed proper procedures in
2  making that determination. Plaintiff ignores that the property constituted a <u>nuisance per se</u> under
3  applicable law and there is no factual dispute in this regard. (See further discussion in Section "C" *infra*,
4  incorporated herein by reference.) The CITY's municipal codes expressly prohibited the type of
5  electrical, gas plumbing and construction work plaintiff readily admits he undertook without permits and
6  the CITY has declared such conditions a nuisance. (AMC §§ 13-13.1 to 13-13.4.) "Nuisance per se are
7  so regarded because no proof is required, beyond the actual fact of their existence, to establish the
8  nuisance." (*People ex rel. Trutanich v. Joseph*, 204 Cal.App.4th 1512, 2012 WL 1004770 at *7 (2012).)
9  Based on plaintiff's own testimony, it is undisputed that such conditions exist, thus there is no factual
10 dispute that the property is a nuisance per se.

11       He also argues that because the CITY did not force him to vacate the premises when the
12 violations first were noted in 2004 and instead allowed him nearly four years to remediate the problems,
13 which he nevertheless elected not to do during that extended time, somehow invalidates a determination
14 the property is a nuisance. There is no requirement that the CITY immediately act to remediate a
15 nuisance or else waive its authority to enforce compliance with Municipal and Health and Safety codes.
16 The CITY was authorized to disconnect electrical service by Cal. Building Code Sections 11.3 and 115.1.
17 The CITY is not responsible for a utility company's termination of water and gas service due to non-
18 payment, or further deterioration to the property plaintiff refuses to repair, and these conditions do not
19 invalidate the determination that the property is a nuisance per se. Vacating property which is a nuisance
20 per se was a valid exercise of the CITY's police power and not a compensable taking.

21       Second, requiring plaintiff to obtain permits to repair the hazardous conditions on his property
22 does not constitute a taking as a matter of law. Nothing precludes plaintiff from acquiring permits and
23 remediating the violations. The CITY's permit system, in fact, implies that permission may be granted
24 for the work to be completed, such that the property may be restored to a habitable condition and plaintiff
25 could resume living in the property and renting rooms to others. (*Riverside Bayview Homes, Inc.,* 474
26 U.S. at 126-127.) Plaintiff once again resorts to inapposite argument about the duplex issue in an attempt
27 to justify his own remiss conduct. The undisputed evidence establishes that the unpermitted, substandard
28 electrical wiring, gas plumbing and construction were found to be hazardous irrespective of whether the

property was a duplex, and **the CITY inspector in fact assumed the property was <u>not</u> a duplex but a multi-unit building when he inspected the premises and found the numerous electrical, gas and construction hazards**. (Carder Deposition, 53:25-54:11, 63:23-64:2.) Plaintiff also apparently argues that if he had hypothetically made an effort to obtain permits to remediate the hazardous conditions, the CITY *might* not have issued the permits because of the ongoing dispute as to whether the property was a duplex. His speculation and hypothetical scenarios are not evidence and insufficient to establish a taking.

Third, plaintiff does not dispute that he cannot establish a per se categorical taking. (*Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 333-336*; Palazzolo v. Rhode Island*, 533 U.S. 606, 631 (2001).)

Fourth, plaintiff cannot establish a temporary regulatory taking under the *Penn Central* factors. The economic impact of the CITY's actions is minimal (plaintiff retains the right to remediate or to sell the subject property), and he has no investment expectations as to a property allowed to fall into such a state of dilapidation that it presents numerous health and safety hazards and renders the premises uninhabitable. Plaintiff was precluded from lawfully renting out the property without remedying the hazards. (Cal. Civil Code §§ 1940 and 1941.1.) Plaintiff's property contained unpermitted, improper electrical wiring, gas plumbing and interior construction, and the front stairway was in imminent danger of collapse. He admittedly failed to repair any of the hazardous conditions, thus he was prohibited from renting the premises. Plaintiff cannot establish the loss of any legitimate investment expectations from lost rental income as he could not lawfully rent the premises in its hazardous, uninhabitable condition.

Plaintiff's unilateral belief that he "addressed almost all the purported 'violations'" is not competent evidence and fails to establish any right to rental income from the property. The municipal codes expressly prohibit any construction without permits. Plaintiff repeatedly testified that the only permit he obtained for repair of the property was for the exterior staircase, and that the staircase never was repaired. It is undisputed that plaintiff never obtained permits to remediate any of the violations specified in any Notice and Order, and the CITY never inspected or approved any purported repairs. Plaintiff's belief that he addressed the violations to his personal satisfaction is insufficient.

Further, the CITY's actions to abate the public nuisance were lawful and reasonable exercises of its police power. The CITY's action does not amount to a physical invasion, but instead is merely a means of ensuring the health and safety of plaintiff, his tenants, and his neighbors for the common good.

(*Guggenheim*, 638 F.3d at 1121.) Plaintiff misrepresents that the CITY's eviction on July 8, 9 and 10, 2008 somehow violated Judge Roesch's Order denying plaintiff's application for a stay of the order to vacate. Judge Roesch's order did not require the CITY to do anything and did not prohibit the CITY from enforcing the Order to Vacate before September 2008 as plaintiff implies. His argument that the July eviction was unreasonable because Judge Roesch subsequently determined the CITY could not refer to the property as a duplex is irrelevant and meritless. The Order to Vacate was based on the unsafe and uninhabitable condition of the property, not because it contained more than two units. The subsequent order finding plaintiff lawfully could maintain more than two units did not eliminate the electrical, gas and construction violations or render the property safe. Argument that the Notices and Orders were wrongfully recorded also is irrelevant. No adverse action was taken against him because of *recordation* and the method of recording had no effect on plaintiff.

Notably, plaintiff does not dispute that the purposes of the Takings Clause warranting compensation are entirely absent in this case. The "purpose of the Takings Clause… is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" (*Palazzolo*, 533 U.S. at 617.) The CITY's conduct in this case does not implicate any of these concerns. The dilapidated, unsafe and hazardous condition of plaintiff's property is not a public burden, and should not be borne by the public as a whole.

### C. Plaintiff's Property Constitutes A Public Nuisance Per Se

It is well established that the government cannot "take" a property interest that the claimant never legitimately possessed, thus there is no "taking" where the government invokes its police power to address health, safety or welfare concerns and abate nuisances that affect the public generally. (*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1029-1030 (1992).) "[T]his recognition that the Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed by those 'existing rules or understandings' is surely unexceptional." (*Id.* at 1030.)

The California Legislature has generally defined "the word 'nuisance' in Civil Code section 3479, which states, 'Anything which is injurious to health … or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property … is a nuisance.'" (*City of Bakersfield v. Miller*, 64 Cal.2d 93, 99 (1966).) It is well settled that

cities are constitutionally authorized to make and enforce all local, police and sanitary laws, and they are empowered to declare what constitutes a nuisance and to establish procedures for its abatement. (*Id*. at 100; *California Reduction Co. v. Sanitary Reduction Works*, 126 F.29 34-36 (9th Cir. 1903).)

"A nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity or circumstance to be a nuisance.…To rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law.…**'Where the law expressly declares something to be a nuisance, then <u>no inquiry beyond its existence need be made</u>…' 'Nuisances per se are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.'**" [Emphasis added, internal citations omitted.] (*Joseph*, 2012 WL 1004770 at * 7.)

Cities are empowered to define by statute the standards by which courts are to judge whether a nuisance exists. (*City of Bakersfield*, 64 Cal.2d at 100; Cal. Gov. Code § 38771.) Where the city's legislative body has enacted an ordinance declaring that a building is a public nuisance because of some condition that renders it unsafe, substandard, or a fire hazard, a court may not usurp the power of the local legislative body and substitute its independent judgment to deny enforcement. (*Id*.) Rather, the function of the courts is limited to determining whether a statutory violation exists. (*Id.*; *Golden Gate Water Ski Club v. County of Contra Costa*, 165 Cal.App.4th 249, 255-256 (2008).)

In the instant case, the legislative body of the CITY enacted ordinances that proscribe as a public nuisance property found to be substandard or unsafe, and specifically provides that "The City Council finds that Unsafe, Substandard and Dangerous Buildings or structures, or buildings and structures or portions thereof constructed without permits, as defined in subsections 13-13.2.2, 13-13.2.3, 13-13.2.4 and 13-13.2.5, are public nuisances because of their conditions or defects to the extent that life, health property or safety of the public or their occupants are endangered.…" (AMC §13-13.1, RJN Exh. A.) An unsafe structure or building is defined under the CITY's Municipal Code as any building or structure, or portion thereof, which threatens the life, health, safety or property of the public or of its occupants by reason of "inadequate maintenance, dilapidation…[or] fire hazard," including, but not limited to, unsafe stairways; portions of the building that, because of dilapidation, deterioration, decay, or faulty

11

construction may partially or completely collapse; faulty electrical wiring or gas connections; and occupancy which violates the fire, health or building regulations of the Municipal Code. (AMC §13-13.2) Subsection 13-13.2.5 provides that "*Construction without a permit* means any building or structure, or portion thereof, which has been constructed without benefit of necessary building permits." Subsection 13-3.3 provides that "No substandard buildings, substandard structures, unsafe buildings or unsafe structures, or buildings or structures or portions thereof constructed without a building permit, shall be maintained in the City of Alameda." Subsection 13-3.4 declares that "Any property found to be maintained in violation of subsection 13-3.3 is hereby declared to be a public nuisance and may be abated in accordance with the provisions of this Article."

Plaintiff testified he substantially altered the electrical wiring and gas plumbing and performed substantial installation, removal and modification of the walls throughout the property, **and he readily admitted that he never obtained any permits for the work**. Plaintiff's work constitutes "construction without a permit" and maintenance of a substandard or unsafe building as defined by subsections 13-3.2.5 and 13-3.3, and the property is a nuisance per se under subsection 13-3.4. **The undisputed evidence thus conclusively establishes the property is a nuisance per se**.

Plaintiff's argument that factual disputes exist as to whether the particular violations or the property as a whole qualifies as a nuisance under *general* nuisance principles is meritless. The property clearly constitutes a nuisance per se under Alameda Municipal Codes, and whether it constitutes a nuisance under other theories is immaterial. (*Golden Gate Water Ski Club*, 165 Cal.App.4th at 255-256.) His reliance on inapposite authorities construing general principles of nuisance liability, rather than nuisance per se, is misplaced. For example, in *Leppo v. City of Petaluma*, 20 Cal.App.3d 711 (1971), the City determined a building was a nuisance because of its dilapidated condition, and although plaintiffs' structural engineers disputed that it was imminently dangerous, the City summarily demolished the building within 9 months. *Leppo* did not involve a nuisance per se analysis or application of statutes *already declaring* the particular condition of the building a nuisance. In *Rose v. City of Coalinga*, 190 Cal.App.3d 1627 (1987), the City found an earthquake damaged building was a nuisance and demolished the building within 2 months. Like the City in *Leppo*, the city council, by resolution, declared the particular building a public nuisance. *Rose* likewise did not involve nuisance per se or application of a

statute establishing the building condition a nuisance. *Armistead v. City of Los Angeles*, 152 Cal.App.2d 319 (1957) again did not involve a nuisance per se, and the general nuisance analysis applied in that case is irrelevant. Further, as the court in *Flahaive v. City of Dana Point,* 72 Cal.App.4th 241 (1999) explained, the statement that a city's "designation of a nuisance does not necessarily make it so" addresses the situation where there is some factual dispute which, if determined in favor of the landowner, would mean the landowner was not in fact violating zoning law or land use ordinance. (*Id*. at 244; *Golden Gate Water Ski Club*, 165 Cal.App.4th at 256.) Where, as here, there is no factual dispute that a particular condition violates land use ordinances the condition is a nuisance per se and no further proof is required. *City of Costa Mesa v. Soffer*, 11 Cal.App.4th 378 (1992) fails to support plaintiff's position that factual issues preclude a finding that his property is a nuisance, and the case in fact supports the determination that his property is a nuisance per se. In *Soffer*, it was undisputed that Soffer violated city ordinances against storing inoperable vehicles. The court reiterated that cities have the power to declare certain uses of property a nuisance, and such use thereupon becomes a nuisance per se, which requires no further proof beyond the fact of its existence to establish the nuisance. (*Id*. at 382.) Proof that Soffer's vehicles fell within its statutory definitions of a nuisance sufficiently established nuisance per se. (*Id*. at 385.) Plaintiff's cited authorities are inapposite and unavailing to overcome the undisputed evidence that his property was a nuisance per se under Alameda Municipal Codes.

Plaintiff's argument that the property was not a nuisance because he "cooperated and committed to compliance" is meritless. That he may have remedied some of the violations, like maintaining weeds and vegetation around the property, providing missing records of fire sprinkler testing and certification and having a fire escape ladder inspected, does nothing to remedy the significant health and safety hazards caused by the improper electrical wiring, gas plumbing and construction. It is undisputed that from the time plaintiff was notified of the violations in 2004 to present, over the course of 8 years, plaintiff has not obtained any permits to remediate the electrical, gas or construction problems; the unpermitted hazardous conditions existed at the time the property was determined a nuisance and at the time it eventually was vacated; and the property constitutes a nuisance per se. Plaintiff's belief that he has remedied some of the original violations, or his opinion that additional unpermitted work he undertook remedied the gas, electrical and construction problems is immaterial. His argument that

further unpermitted work on the rotted front stairway to redirect traffic to a less dilapidated portion of the stairs in some way relates to a nuisance determination is confounding. His claims merely demonstrate further unpermitted construction, and support a nuisance per se determination.

Plaintiff's claims that factual disputes preclude a nuisance finding because he did not understand specifically how the electrical wiring, gas plumbing and interior construction was improper is utterly specious and immaterial. The CITY's Notices and Orders specified "significant amounts of illegally, incorrectly, and uninspected electrical wiring installed throughout the house", gas plumbing "disconnected or uncapped from the appliances" and construction without required permits, among other things, as violations. Despite his current claims that he was prevented from remedying the conditions because he was unsure what the violations encompassed, plaintiff repeatedly admitted he never made any attempt to contact the CITY for further clarification or specificity of the violations. Moreover, regardless of how these conditions specifically were manifested throughout the property, the undisputed evidence remains that **plaintiff had no permits for any of the electrical, gas or construction work he performed**.[3] The unpermitted work is in itself sufficient to establish nuisance per se under Alameda's Municipal Codes, and his claims that he was unclear as to the particular manner the health and safety code violations occurred is immaterial.

Plaintiff once again resorts to argument that the duplex designation dispute precludes a nuisance determination. His arguments are meritless because irrespective of whether the property was lawfully a duplex or a 10-unit apartment, the construction was undertaken without any permit. Even if the property lawfully was a 10-unit apartment, any construction, whether to create the units or otherwise, required a permit from the CITY. Plaintiff admittedly never obtained any permit for construction, and admittedly moved, modified and demolished walls throughout the house unrelated to converting the property from a duplex to a 10-unit apartment. Plaintiff ignores that any of the three remaining violations, electrical, gas

---

[3] Plaintiff's assertion that he upgraded the property to 200 amps and installed circuits pursuant to a 1987 electrical permit is irrelevant and appears intentionally misleading. Plaintiff testified that he made significant modifications to the electrical wiring throughout the house without any permits between 1973 and 1985, two years *before* the permit was issued in 1987. The permit issued in 1987, purportedly to upgrade to 200 amps and install circuits related to the upgrade, did not retroactively permit or approve plaintiff's prior unpermitted work. The permit also did not authorize any other electrical work undertaken up to the time the CITY discovered the unpermitted, hazardous electrical wiring in 2004.

and construction work undisputedly performed without a permit, standing alone, in itself constitutes a nuisance per se. No further judicial determination of nuisance is warranted or proper. The unpermitted construction was in itself a nuisance per se under Alameda ordinances. The duplex dispute is immaterial.

The California Legislature has long recognized a municipality's power to abate public nuisances. (*Thain v. City of Palo Alto,* 207 Cal.App.2d 173, 189 (1962), *citing* 62 C.J.S. Municipal Corporations § 281, (c)(4), pp. 632-633; McQuillin, Municipal Corporations, 3d ed. §24.71, pp. 591-594.) The undisputed evidence establishes plaintiff's property was a nuisance per se, and further shows that hazardous conditions existed since at least 2004 and still exist. Plaintiff cannot lawfully maintain a public nuisance and the CITY's abatement efforts are a valid exercise of its police powers.[4]

## III.   CONCLUSION

For the reasons set forth above and in the CITY's moving papers, summary judgment should be granted in favor of the CITY and against plaintiff.

Dated: May 15, 2012                                                                  BERTRAND, FOX & ELLIOT

By: _____/s/_____
Gregory M. Fox
Attorneys for Defendant/Counterclaimant
CITY OF ALAMEDA

---

[4] Plaintiff's argument that the abatement procedures were improper is unsupported and incorrect. His claims the CITY failed to comply with AMC §13-12 procedures is meritless, as none of the Notices and Orders were issued under 13-12. Rather, the property was a substandard building and nuisance per se under AMC §13-13. The requirements of AMC §13-12 are inapplicable, and the CITY was required to record the Notices and Orders under §13-13 and Cal. Health & Safety Code §§ 17985 and 17992. His cited authorities also are inapposite. *Connecticut v. Doehr,* 501 U.S. 1 (1991) involved writ of attachment related to assault and battery action; *Dolan v. City of Tigard,* 512 U.S. 374 (1994) challenged condition of approval requiring dedication of portion of property; *Harris v. County of Riverside*, 904 F.2d 497 (9th Cir. 1990) involved planning department's refusal to issue final determination on land use until substantial fees paid by owner; and *Tri-State Dev., Ltd. V. Johnson*, 160 F.3d 528 (9th Cir. 1998) involved prejudgment attachment statute requiring bond without prior notice or hearing.

His attempt to now belatedly challenge the inspection warrant issued by Judge Gee in 2007 likewise is unsupported and improper. Statutes governing administrative warrants vest substantial discretion in the court to determine probable cause. (*County of Contra Costa v. Humore, Inc.,* 45 Cal.App.4th 1335, 1351 (1996).) Affidavits supporting search warrants are presumed valid. (*Franks v. Delaware*, 438 U.S. 154, 171 (1978).) No evidence shows the warrant was issued under false pretenses, any abuse of discretion by Judge Gee, or any justification for his belated attempt to challenge the validity of the warrant five years after issuance.