IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOHERTY,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ALAMEDA AND CITY OF ALAMEDA HOUSING AND BUILDING CODE HEARING AND APPEALS BOARD,<br><br>    Defendants. | No. C 09-04961 EDL<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY OF ALAMEDA,<br><br>    Counterclaimant,<br>vs.<br><br>JOHN DOHERTY and DOES 1-15, inclusive,<br><br>    Counterclaim-defendants. | |

Defendant City of Alameda has filed a Motion for Summary Judgment of Plaintiff's claim for inverse condemnation, his only remaining claim in this action.[1] Defendant contends that summary judgment is appropriate because Plaintiff has failed to exhaust administrative remedies, there has been no unconstitutional taking, and Plaintiff's property constitutes a "per se nuisance." For the

---

[1] The City has a counterclaim against Plaintiff for preliminary and permanent injunctive relief requiring Plaintiff to bring the property into compliance with applicable codes. Dkt. # 41. The counterclaim is not at issue in this motion.

following reasons, the Court GRANTS Defendant's motion for summary judgment.

## I.  Background

Plaintiff John Doherty is the owner of a building located at 1617 Central Avenue in Alameda, California. Fox Decl. Ex. 113 (Doherty Depo.) at 12; Doherty Decl. ¶ 1. The property was originally built pre-1900 as a single family dwelling, but in 1945 the building was converted into a 10-unit building and it was in that form when Mr. Doherty purchased the property in 1973. Doherty Decl. ¶ 2; Doherty Depo. 19-20; Loughrey Decl. ¶ 1, Ex. 22. At that time, Mr. Doherty did not inquire as to whether the units were legally constructed, and he did not conduct any investigation on the matter. Doherty Depo. 20, 26-27. Plaintiff lived in one of the basement units and rented out nine other units for income. Doherty Depo. 24-25; Doherty Decl. ¶ 1-2.

Between 1973 and 1985, Plaintiff made several changes to the property, including rearranging circuits to redistribute the electrical load (id. at 35-40), changing the plumbing (id. at 40-44), altering structural walls (id. at 50-54, 71), adding ducting and altering flues (id. at 56-57), and adding stoves (id. at 60-63). Plaintiff admittedly did not have a contractors' license and did not obtain permits for this work. Id. at 40, 43-44, 51-53, 57, 61, 63-64. In 2000, Plaintiff discovered that the front staircase of the building had dryrot and needed to be replaced, but did not repair the stairs due to lack of funds. Id. at 64-65, 70.

In 1982, the City inspected the property and determined that it required the installation of a metal fire sprinkler system because it was a residential apartment buildings of three or more units and three or more stories. Doherty Decl. ¶ 3. Mr. Doherty wanted to use plastic pipes for the sprinkler system instead of metal. Id. ¶4. In 1985, the City brought an action against Mr. Doherty in Alameda County Superior Court to enforce the use of metal pipes for the sprinkler system, and at that time a city official testified that the property was a 10-unit apartment house, not a duplex.[2] Doherty Decl. ¶ 5; Loughrey Decl. ¶ 1. Plaintiff was ordered to install metal piping, which he did.

---

[2]Beginning in 2003, the City took the position that Plaintiff's property was a two-unit building, and ordered him to return the building to its original status as a "duplex." This position – contrary to the City's position in 1985 – has led to much confusion and contention between the parties for many years, and eventually a state court agreed with Plaintiff and ordered the City to stop referring to Plaintiff's property as a duplex. As is discussed below, Plaintiff makes much of the "duplex issue" in his Opposition, but whether or not the building was deemed a 10-unit apartment building or a duplex ultimately has no bearing on the material issues in dispute now.

2

Doherty Decl. ¶ 6; Loughrey Decl. Ex. 23.

In December 2003, the Fire Department filed a complaint with the Planning and Building Department regarding health and safety violations on the property. Fox Decl. Ex. 115 (McFann Depo.) at 29; McFann Decl. ¶ 8. In December 2003 and January 2004, the Fire Marshal and building inspectors inspected Plaintiff's property while Plaintiff was present. Fox Decl. Ex. 114 (Carder Depo.) at 23-31, 50, 60; McFann Depo. 23-25, 31, 33, 38; McFann Decl. ¶ 9; Jeffrey Decl. ¶4-7; Fisher Decl. ¶4; Doherty Decl. ¶ 8. During the inspections they observed several obvious code violations relating to, among others: gas lines, electrical wiring and fixtures, water heaters, load-bearing walls, water damage to walls, fireplaces, foundation, and open sewer lines. Carder Depo. 32-37, 39, 42-43, 59; McFann Depo. 53-55; McFann Decl. ¶ 9; Jeffery Decl. ¶¶ 6-7; Fisher Decl. ¶¶ 4-5.

Following these inspections, the building official and Fire Marshal found that the property posed a fire hazard and a danger to its occupants because, among other things, the front exterior stairway was in danger of collapse; a significant amount of illegal electrical wiring had been installed throughout the structure, including bare wires hanging from the ceiling and protruding from the walls; there were disconnected and uncapped gas lines; and construction to create more than the two legal units recognized by the City had been performed without permits. Doherty Depo. 104; Carder Depo. 46-48, 59, 61, 67; McFann Depo. 37-41, 57; McFann Decl. ¶¶ 10-11; Fisher Decl. ¶¶ 4-5. They concluded that the property was a public nuisance per § 13-13.4 (formerly 13-10.4). Doherty Depo. 84-86; Doherty Decl. ¶ 10; McFann Decl. ¶ 12-13; McFann Depo. 41. The inspectors' determination that numerous health and safety violations existed was not based on whether the property was classified as a duplex or a 10-unit building, and the building inspector assumed it was a multi-unit building when he conducted his inspection. Carder Depo. 53-54 (inspector made "no determination on the required number of units"), 63-64 (inspector's "issues with the building were life-safety issues, not number of units").

Plaintiff was notified of this result through an April 29, 2004 Notice and Order listing nine violations and requiring him to vacate or commence repairs within 30 days. Doherty Depo. 78-82, 88; Doherty Decl. ¶ 10, Ex. 1; Carder Depo. 46, 38, 59-63; McFann Decl. ¶13; Def.'s Ex. 42. Plaintiff claims that the Notice was vague and gave no guidance as to the scope of the issues the City

1  was concerned about. Doherty Decl. ¶ 11; Doherty Depo. 126-27. However, Plaintiff did not
2  contact the City, obtain permits to repair most issues, or vacate within 30 days. Doherty Depo. 83-
3  84, 104-11, 123; Carder Depo. 52-53, 62-63; McFann Depo. 49-50; McFann Decl. ¶ 13. Plaintiff did
4  apply for and receive a permit to repair the stairway. Doherty Depo. 65-68; McFann Decl ¶ 15.
5  However, the stairway was never repaired and the permit expired. Doherty Depo. 69-70; McFann
6  Decl. ¶¶ 15-16. Plaintiff has not applied for or received any other permit to repair the property.
7  McFann Depo. 64, 83; McFann Decl. ¶ 15; Doherty Depo. 84, 91-92, 130-34. However, Plaintiff
8  claims that, "to the best of his ability," he abated seven of the nine violations listed in the Notice.
9  Doherty Decl. ¶ 12, 16-22.

10  On May 7, 2004, Plaintiff appealed parts of the Notice and Order, but did not object to the
11  findings regarding the front stairway or open-sewer lines. Doherty Depo. 112-113; Doherty Decl. ¶
12  13, 15, Ex. 2. After eight months, a hearing on Plaintiff's appeal was scheduled for January 25,
13  2005. McFann Depo. 59-60; Doherty Decl. ¶ 24. Plaintiff submitted a packet of information relating
14  to steps he claimed to have taken to abate the issues in the Notice. Doherty Decl. ¶ 16-24, Ex. 5-6.
15  Plaintiff's appeal was denied on May 17, 2005. Id. Ex. 7. The Decision noted that Plaintiff had
16  done some remedial work, but found outstanding issues regarding gas lines and electrical work, and
17  also ordered the property to be returned to a duplex and illegal construction associated with
18  additional units removed. Doherty Decl. ¶ 25, Ex. 7. On May 27, 2005, Plaintiff attempted to
19  appeal this decision, but was told by Building Official Greg McFann that there was "no appeal
20  procedure for this process and the decision is final and effective." McFann Depo. 74-75; Doherty
21  Decl. ¶ 26, Ex. 8.

22  On September 6, 2005, Plaintiff was issued a $250.00 administrative citation for his failure to
23  comply with the Notice and Order, which he appealed. Doherty Decl. ¶ 27. A hearing on his appeal
24  was scheduled for November 17, 2005 before Hearing Officer Jeff Cambra. Cambra Decl. ¶ 2-3; see
25  also Doherty Decl. ¶ 27, Ex. 9. The City submitted a brief in connection with the appeal, and did not
26  disclose that it previously determined the property to be a multi-unit building and not a duplex.
27  Doherty Decl. ¶ 27, Ex. 9. The hearing was scheduled to begin at 9:00 a.m. but was delayed and
28  Plaintiff refused to wait and left the hearing at 9:15 a.m. Doherty Depo. 136-144; Doherty Decl. ¶

4

27. On December 22, 2005, Plaintiff's appeal was denied because the modifications were made unlawfully without permits, and because Plaintiff failed to participate in the hearing. Doherty Depo. 142-44; Doherty Decl. ¶ 29; Cambra Decl. ¶ 4; Def.'s Ex. 112. Plaintiff appealed Hearing Officer Cambra's decision, and Commissioner Rausch denied the appeal for failure to exhaust administrative remedies. Doherty Decl. ¶ 29, Ex.11. Plaintiff did not appeal Commissioner Rausch's decision. Doherty Depo. 142-44.

In 2007, the City obtained an inspection warrant authorizing officials to re-inspect the property. McFann Depo. 22-23, 87-89; McFann Decl. ¶ 17; Higares Decl. ¶¶ 4-5; Fisher Decl. ¶¶ 6-9. The warrant was based on a declaration by Enforcement Officer Higares stating that, among other things, the property was illegally altered to contain nine units (even though the City had previously taken the position that it was a multi-unit dwelling). Doherty Decl. ¶ 30, Ex. 12-13. The Higares declaration did not reference the prior Notice and Order acknowledging that Plaintiff had previously done some remedial work on the property. See id. Inspectors found many of the issues they had found in 2004 still present. McFann Depo. 88; McFann Decl. ¶¶ 18-19; Fisher Decl. ¶¶ 6-9; Doherty Decl. Ex. 14. On April 18, 2007, another Notice and Order was served on Plaintiff specifying violations relating to wiring, gas connections and plumbing, as well as illegal construction creating more than two units. Doherty Decl. ¶ 31, Ex. 14; Def.'s Ex. 64. The Notice and Order advised Plaintiff that he had thirty days to commence repairs and return the property to a duplex or vacate. Doherty Depo. 145-46; Doherty Decl. ¶ 31, Ex. 14; Carder Depo. 74-75; McFann Depo. 90; McFann Decl. ¶¶ 20-21. Plaintiff did not contact anyone at the City regarding the violations, and took no remedial action in response to the 2007 Notice. Doherty Depo. 146-47; McFann Decl. ¶ 22. Instead, he appealed the City's designation of the property as a duplex. Doherty Decl. ¶ 32.

A hearing on the appeal was held before Commissioner Rapposelli. Plaintiff presented documentation regarding the property's status as a 10-unit building, as well as evidence that he had remedied some of the issues cited. Doherty Decl. ¶ 32-33, Ex. 16. During the hearing, the Commissioner had two *ex parte* meetings with the Assistant City Attorney. Doherty Decl. ¶ 34. The Commissioner found against Plaintiff and upheld the designation of the property as a duplex. Doherty Decl. ¶ 35. Plaintiff then filed an unsuccessful appeal to the Building Permit Appeals

Board. McFann Depo. 98; Doherty Decl. ¶ 36. Plaintiff claims that, in connection with this appeal, he asked that rules and procedures relating to the appeal hearing be sent to him in advance, but they were not. Doherty Decl. ¶ 36. A hearing was held on February 27, 2008, at which time he was given a copy of the rules and procedures to review for fifteen to twenty minutes, and Plaintiff's request for a continuance based on the fact that he did not receive rules or procedures in advance of the hearing was denied. Doherty Decl. ¶ 37. Plaintiff submitted a packet of information documenting the City's previous determination that the property was a 10-unit building. Doherty Decl. ¶ 38, Ex. 16. The Board upheld the determination that the property was a duplex, found there was no due process violation for failure to send the rules in advance, held that the deficiencies on the property constituted a threat to safety and a fire hazard due to electrical deficiencies and improper gas connections, combined with the rotten and dilapidated stairway and the disabled and elderly condition of the tenants residing at the property, and issued an Order to Vacate. McFann Declaration ¶ 22; Doherty Decl. ¶ 39, Ex. 17.

On April 28, 2008, Plaintiff filed a lawsuit in Alameda County Superior Court alleging a "taking" based on the Order to Vacate. Doherty Decl. ¶ 40. Plaintiff was then served with a Notice to Vacate on April 30, 2008. McFann Depo. 79-82; McFann Decl. ¶¶ 22-23; Def.'s Ex. 65; Doherty Decl. ¶ 40. On May 15, the City filed a motion to dismiss the "taking" lawsuit. On May 16, Plaintiff filed a petition for writ of administrative mandamus seeking to overturn the Board's decision, and in that action filed a request to stay the Order to Vacate. Doherty Decl. ¶ 40. Plaintiff's request to stay the Order to Vacate was denied by Judge Roesch, and the City posted a second Order to Vacate by June 4, 2008. Doherty Decl. ¶ 42, Ex. 18-19. On July 8, 9 and 10, 2008, Plaintiff and his tenants were vacated from the subject property pursuant to the court's order, and gas and electricity were turned off. McFann Declaration ¶ 24-25; Carder Depo. 64-66; Carder Decl. ¶ 4; Doherty Decl. ¶ 43.

On or about September 19, 2008, Plaintiff filed a First Amended Petition for Writ of Administrative Mandate challenging the City's conclusion that the property was limited to use as a duplex. Doherty Depo.147; Def.'s Request for Judicial Notice ("RJN") Exh B (First Amended

6

Petition for Writ of Administrative Mandate, Alameda Court Docket No. RG08388057).[3] The writ did not specifically address the findings that the property contained illegal and unsafe wiring, gas lines and plumbing, or illegal construction unrelated to the duplex issue other than a mention in a footnote. RJN Ex. B. On March 4, 2009, Judge Roesch granted the writ and found that the City was estopped from referring to the property as a duplex, but did not address any issues related to the electrical or gas plumbing violations or illegal construction unrelated to the duplex issue. RJN Exh. C (Proposed Statement of Decision and Order Granting Petition for Writ of Administrative Mandate); RJN Exh. D (Judgment Granting Peremptory Writ of Administrative Mandamus); Doherty Decl. ¶ 44, Ex. 20. Neither Plaintiff nor the City appealed Judge Roesch's order. Doherty Depo. 175:12-14.

On April 16, 2009, the City issued a Revised Notice and Order deleting reference to the property as a duplex and setting aside findings based upon the property being designated as a duplex. McFann Decl. ¶ 26; Def.'s Ex. 110. However, the Revised Notice and Order specified that the property was unsafe because of violations consisting of illegal electrical wiring, improper gas plumbing and illegal construction. McFann Decl. ¶ 26. Plaintiff was given 30 days to vacate the premises or seek permits to abate the unsafe and unlawful violations, but he did not seek or obtain any permits to repair the hazardous conditions. Doherty Depo. 171-73; McFann Depo. 83. In May 2009, the City inspected and photographed the exterior of the property, which revealed that the front stairway still had not been repaired. Meyer Decl. ¶ 4.

In the state court taking action, on April 13, 2009, Judge Keller denied the City's Motion for Judgment on the Pleadings, including the City's argument that Plaintiff had failed to exhaust his administrative remedies. Doherty Decl. ¶ 45, Ex. 4. In September 2009, Plaintiff amended the state court complaint to state claims for inverse condemnation, §1983 due process violations, and forcible entry. Based on the addition of a federal claim, Defendant removed the case to this Court in October 2009.

---

[3] In connection with this motion, the City has filed a request for judicial notice of Alameda Municipal Code sections 13-13.1-13-13.4 as well as several documents filed in state court. These documents are matters of public record and Plaintiff does not question the authenticity of these documents. The Court therefore takes judicial notice of these documents.

## II. LEGAL STANDARD

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

#### 1. Estoppel

The City argues that Plaintiff's claim for inverse condemnation is legally barred by his failure to exhaust administrative remedies with respect to the multiple code violations specified in the

8

1  Notices and Orders to Vacate. Specifically, the City contends that it is undisputed that Plaintiff did
2  not timely file a petition for writ of administrative mandamus regarding the code violations raised in
3  the Notice and Order of April 29, 2004, April 18, 2007, or April 16, 2009 as required by Section
4  1094.5. It contends that Plaintiff's sole petition for a writ of administrative mandamus related *only*
5  to the City's designation of the property as a duplex as opposed to a 10-unit building (the "duplex
6  issue"), which was unrelated to the City's decision to order him to vacate the property based on
7  multiple health and safety violations.
8        Plaintiff first opposes on the basis that the City has already raised this exhaustion issue in the
9  Superior Court taking action through a Motion for Judgment on the Pleadings, before the case was
10 removed to this Court, and Judge Keller rejected it. Louhrey Decl. ¶ 6; Doherty Decl. ¶ 45, Ex. 21.
11 With respect to Plaintiff's challenge to the April 18, 2007 Notice and Order through a petition for a
12 writ, although the petition had not been filed at the time the inverse condemnation action was filed,
13 Judge Keller held that it would put form over substance to dismiss the action for failure to exhaust
14 administrative remedies since the writ petition had subsequently been granted in substantial part.
15 Doherty Decl. ¶ 45, Ex. 21; RJN Ex. B; Fox Reply Decl. Ex. 1. Plaintiff argues that collateral
16 estoppel precludes the City from re-arguing this point after having lost on the issue in state court
17 prior to removal.
18       However, the City persuasively argues that the successful writ petition cited by Judge Keller
19 related *only* to the duplex issue in the 2007 Notice and Order, not the code violations in any of the
20 Orders. Further, even if the City raised the same or similar argument in state court, the procedural
21 posture was different at that time. The complaint at issue in state court at the time of Judge Keller's
22 decision did not contain the same claims or allegations as the SAC does now that it has been
23 amended to include additional facts relating to the code violations. Compare Pl.'s Ex. 28 (state court
24 inverse condemnation complaint filed April 28, 2008) with Dkt. #25 (second amended complaint).
25 Additionally, unlike a motion for judgment on the pleadings where the allegations are taken as true,
26 this is a motion for summary judgment where both sides have presented evidence. There is no
27 evidence that Plaintiff ever challenged any code violation – which is what led to his eviction giving
28 rise to his taking claim – through a petition for a writ. Therefore, estoppel does not bar the City from

1  making an exhaustion argument now.

### 2. Failure to Exhaust Administrative Remedies

Generally speaking, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-187 (1985). Under Williamson, an as-applied takings claim is ripe only if the plaintiff can establish that: "(1) 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue, and (2) the claimant has sought 'compensation through the procedures the State has provided for doing so." Carson Harbor Village, Ltd. v. City of Carson, 353 F.3d 824, 826-827 (9th Cir. 2004). "If a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Ventura Mobilehome Communities Owners Ass'n v. City of Buenaventura, 371 F.3d 1046, 1052, (9th Cir. 2004).

Under California law, "[s]pecial procedural requirements apply where an inverse condemnation action is based upon a regulatory taking accomplished by a discretionary action of an administrative agency. In such cases, the proper procedure is to bring the inverse condemnation action in conjunction with, or after, a petition for administrative mandamus, as defined in section 1094.5 of the Code of Civil Procedure, the procedure generally required when the validity or propriety of an action or determination by an administrative agency is challenged." Patrick Media Group, Inc. v. California Coastal Com., 9 Cal.App.4th 592, 607 (1992). "Failure to obtain judicial review of a discretionary administrative action by a petition for a writ of administrative mandate renders the administrative action immune from collateral attack, either by inverse condemnation action or by any other action." Id. at 608. Pursuant to California Code of Civil Procedure section 1094.6, a petition for writ review must be filed within 90 days of a final decision.

For the following reasons, because there is no evidence that Plaintiff timely exhausted his administrative remedies, the three Notice and Orders to Vacate are "immune from collateral attack"

10

1  and Plaintiff's claim fails as a matter of law.

#### a. April 29, 2004 Notice and Order

The 2004 Notice and Order specified multiple code violations as well as the illegal construction of more than two units. McFann Decl ¶ 13; Def.'s Ex. 42. Plaintiff appealed the Notice, and Hearing Officer Reese issued an unfavorable decision. Cambra Decl. ¶ 4, Def.'s Ex. 112. Plaintiff appealed Hearing Officer Reese's decision and the appeal was denied on September 5, 2006 by Commissioner Rausch for failure to exhaust administrative remedies. It is undisputed that Plaintiff did not file a writ petition regarding Commissioner Rausch's adverse decision relating to the 2004 Notice and Order.

However, Plaintiff contends that he should be deemed to have exhausted his administrative remedies regarding the 2004 Notice and Order because, following his unsuccessful appeal, Building Official McFann told him that "under Alameda Municipal Code section 13-10.7(e), there is no appeal procedure for this process and the decision is final and effective." Doherty Decl. ¶ 26, Ex. 8. In his opposition brief, Plaintiff contends that, based on this statement, he reasonably believed he had exhausted his administrative remedies. Opp. at 10. However, there is no *evidence* of this belief as the statement is not contained in Plaintiff's declaration. Further, Plaintiff *did* continue to challenge the 2004 Notice and Order and the resulting administrative citation for failure to comply throughout 2005, so Mr. McFann's statement did not dissuade him from continuing to appeal. Doherty Decl. Exs. 9-11.

#### b. April 18, 2007 Notice and Order

The 2007 Notice and Order specified multiple code violations as well as illegal construction of more than two units. McFann Decl ¶ 20-21; Ex. 64. Plaintiff appealed the Notice and Order, and submitted evidence that he contends showed that at least some of the code violations had been remedied. Doherty Decl. ¶ 33. His appeal was rejected and he appealed that decision to the Appeals Board, where he claims to have again submitted evidence that he had remedied the code violations. Doherty Decl. ¶ 38; but see Doherty Depo. 146-47 (admitting that he never obtained permits for the electrical, plumbing or other improvements he did on the property). Plaintiff eventually challenged this Order through a writ, but the writ was specifically directed to the duplex issue, not the code

11

violations, though the code violations were briefly mentioned in the writ petition. See RJN Ex. B; Loughrey Decl. ¶ 8. The state court granted the writ and required the City to set aside that portion of its decision finding that the property is a duplex. RJN Ex. C, D. The judgment granting the writ did not mention or make any ruling relating to the code violations. Id. Therefore, this writ petition did not exhaust Plaintiff's remedies regarding the code violations.

### c. April 16, 2009 Notice and Order

The 2009 Notice and Order was issued in response to Plaintiff's successful writ. It simply removed reference to the duplex issue, and continued to specify the multiple code violations. McFann Decl ¶26; Ex. 110. Plaintiff did not appeal this Order. Plaintiff contends that he relied on Judge Keller's statement in the inverse condemnation action that he had exhausted administrative remedies based on his writ petition, but there is no evidence that he failed to file a writ as to the 2009 Notice and Order in reliance on this statement. Further, any such reliance would not have been reasonable because his writ petition was directed to the duplex issue and not the health and safety violations that were the subject of the 2009 Notice and Order.

In light of the foregoing, it is undisputed that Plaintiff was ordered to vacate his property because the City believed that the property was in violation of multiple code provisions, regardless of the duplex issue. Because Plaintiff did not timely file a petition for a writ of administrative mandamus regarding the code violations, he failed to properly exhaust administrative remedies and his claim necessarily fails.

### B. No Regulatory Taking

Even if Plaintiff had exhausted his administrative remedies, his claim for inverse condemnation would still fail because there is no evidence of a "taking" of his property. See Regency Outdoor Advertising, Inc. V. City of Los Angeles, 39 Cal. 4th 507, 516 (2006) (to establish inverse condemnation, must first establish that a public entity has taken property).

The City first argues that Plaintiff's inverse condemnation claim is based solely on its actions in attempting to enforce numerous state and municipal health, safety, building and file codes, and that "orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings . . . have long been considered permissible exercises of the police power," and

have not been deemed compensable takings. See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 334 (2002). The City further argues that Plaintiff cannot establish that the government activity was objectively unreasonable or not legally justified, where it was merely a means of ensuring the health and safety of Plaintiff, his tenants and his neighbors for the common good. See Lowenstein v. City of Lafayette, 103 Cal. App. 4th 718, 728-29 (2002). Plaintiff counters that there is a factual dispute over whether the property constituted a public nuisance in the first place, and whether the City followed proper rules and procedures in making its determinations. However, as discussed below, there is no factual dispute that the property was a nuisance *pe se* under applicable law expressly prohibiting the type of electrical, gas, plumbing and construction work that Plaintiff *admittedly performed without permits*. See People ex rel. Trutanich v. Joseph, 204 Cal. App. 4th 1512 (2012).[4]

Second, the City argues that requiring Plaintiff to "obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted." U.S. v. Riverside Bayview Homes, Inc., 474 U.S. 121, 126-27 (1985). Plaintiff contends that the City's position ignores the parties' multi-year fight over the duplex issue, and that "there exists a disputed issue of material fact whether Mr. Doherty could have obtained any permits for construction or demolition until that issue was cleared up." Opp. at 14. However, Plaintiff does not point to any evidence to support his position that the duplex issue impacted his ability to work on the property, and instead it is undisputed that Plaintiff never applied for any permits (other than a permit to fix the front stairs which he never did due to lack of funds). It is also undisputed that "[t]he City would not, at any time, deny Mr. Doherty the ability to fix a hazard." Carder Depo. 53.

Third, the City argues that Plaintiff cannot establish a temporary regulatory taking under the

---

[4]In connection with this issue, Plaintiff also argues that, if the property was truly so dangerous, the City would have ordered Plaintiff to vacate in 2004 after the first Notice and Order, and would not have continued to let the property continue to deteriorate since 2007. However, the City persuasively counters that there is no requirement that it immediately act to remediate nuisances or waive its right to enforce regulations, and that its act in vacating a property that was a nuisance per se was not an unreasonable exercise of police power. Plaintiff also defends his claim on the basis that the City improperly recorded the Notices and Orders in violation of Alameda Municipal Code section 13-12-b(3), which requires prior notice. However, he has been unable to explain how an alleged improper recording had an effect on him that rose to the level of a taking.

13

1 test set forth in Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978), which
2 examines: (1) the economic impact of the regulation on the claimant; (2) the extent to which the
3 regulation has interfered with investment-backed expectations; and (3) the character of the
4 governmental action. The City contends that Plaintiff could not have any investment expectation in
5 a property so dilapidated that it was in violation of numerous health and safety codes and eventually
6 rendered uninhabitable, and in any event he retains the right to remediate or sell the property.
7 Plaintiff counters that he addressed "almost all' of the code violations in the hopes of maintaining his
8 property and continuing his rental income so the City's position that the economic impact on his was
9 minimal is untrue. However, Plaintiff's subjective belief about whether he remedied any or all of the
10 code violations is not competent evidence of his right to receive rental income from his property.
11 Thus, under Penn Central, there was no taking.

      C.      **Nuisance *Per Se***

13 The City argues that Plaintiff was never entitled to violate various public safety ordinances
14 and create a "nuisance per se," and there can be no "taking" of property that Plaintiff was never
15 entitled to possess. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029-32 (1992)
16 (that "the Takings Clause does not require compensation when an owner is barred from putting land
17 to a use that is proscribed by those 'existing rules or understandings' is surely unexceptional"). State
18 law defines the range of interests that may be regulated under a municipality's police power. Id. at
19 1030. In California, a nuisance is defined by statute as "[a]nything which is injurious to health . . . or
20 is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere
21 with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479; City of Bakersfield v.
22 Miller, 64 Cal.2d 93, 99 (1966).

23 Cities have the power to define by statute the standards by which courts are to judge whether
24 a nuisance exists, and it "would be a usurpation of power for a court to arbitrarily deny enforcement
25 merely because in its independent judgment the danger caused by a violation was not significant."
26 Id. "[A] nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise
27 of the police power, expressly declares a particular object or substance, activity, or circumstance, to
28 be a nuisance." Beck Development Co. v. Southern Pacific Transportation Co., 44 Cal.App.4th

1160, 1206–1207 (1996). "[W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made." Id. at 1207. "'Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance." City of Costa Mesa v. Soffer, 11 Cal.App.4th 378, 382 (1992) (footnote omitted). A fire hazard "clearly constitutes a nuisance" that can constitutionally be proscribed by a municipality pursuant to Civil Code section 3479. City of Bakersfield, 64 Cal. 2d at 100. Further, municipalities unquestionably have the power to abate nuisances. See Motion at 19 (citing multiple state codes relating to abatement of nuisances). The Court's function "is limited to determining whether a statutory violation in fact exists, and whether the statute is constitutionally valid. City of Bakersfield, 64 Cal. 2d at 100.

Alameda has enacted ordinances declaring that structures that are unsafe and substandard, or constructed without a permit, are a nuisance and may be abated. See RJN Ex. A (Alameda Municipal Code § 13-13.1; 13-13.4). An unsafe structure is defined as one that threatens public safety by reason of inadequate maintenance, dilapidation, or fire hazard and includes, among other things, structures with issues relating to stairways and wiring and gas connections. Alameda Municipal Code § 13-13.2. Plaintiff does not challenge the constitutionality of the Alameda nuisance code scheme, so the Court's role is limited to determining whether a code violation existed.

Plaintiff points out that a governmental entity's designation of a nuisance "does not necessarily make it so." Flahive v. City of Dana Point, 72 Cal. App. 4th 241, 244 n.4 (1999). However, that statement was made in the context of a factual dispute "which, if determined in favor of the landowner, would mean the landowner was not in fact violating zoning law or land use ordinance." Golden Gate Water Ski Club v. County of Contra Costa, 165 Cal.App.4th 249, 256 (2008) (distinguishing Flahive and finding a nuisance per se where there was no factual dispute that an admitted act violated the municipality's land use and related ordinances); see also City of Costa Mesa v. Soffer, 11 Cal. App. 4th 378 (1992) (proof that action fell within statutory definition of nuisance established nuisance per se). Here, it is undisputed that Plaintiff did not obtain a permit for much of the work he did on the property (including electrical, plumbing and gas work and reconfiguring of walls) and the stairs to the property have been rotting and in need of repair since

15

2000 but he has not repaired them. Plaintiff was therefore admittedly in violation of 13-13.3 and his property was a per se nuisance according to 13-13.4.

Plaintiff's reliance on cases relating to nuisances in general is inapposite to this case, where Plaintiff admits that he maintained his property in violation of Alameda's nuisance law by failing to obtain permits for work and maintaining unsafe stairs. Plaintiff ignores this admission, and instead argues that he cooperated with the City and abated seven of the nine code violations charged in the 2004 Notice and Order. See Opp. at 17-18 (discussing his efforts to abate some of the violations). He argues that there is a factual dispute regarding the alleged code violation relating to electrical wiring, because the Notice and Order did not identify exactly what wiring was the basis for this violation and he did some electrical work pursuant to a 1987 permit. Doherty Decl. ¶ 22. He makes a similar argument with respect to the code violation relating to gas plumbing, arguing that he fixed the issue and submitted evidence of abatement to the hearing officer. Doherty Decl. ¶ 23. These arguments miss the point. Even if true that his work abated the problems listed in the Notice and Orders, he does not dispute that he did the work without obtaining the required permits so the property was still a nuisance per se under Alameda law.

Plaintiff also argues that the City did not follow its own procedures in determining that the property constituted a nuisance in violation of his due process rights. He contends that the 2004 and 2007 Notices and Orders were deficient because they "were so vague as to be virtually incomprehensible" in violation of Alameda Municipal Code § 13-12-b(1)-(3) and the City's Handbook on Municipal Code Enforcement. See Loughrey Decl. ¶ 10; Doherty Decl. ¶ 11; Doherty Depo. 126-27.[5] Mr. McFann testified that he did not reach out to Plaintiff to further explain the deficiencies with electrical work listed in the Notice and Order. McFann Depo. at 56-59. However, Plaintiff admittedly did not try to seek clarification from the City about exactly what was encompassed by any Notice and Order, and elsewhere he takes the contradictory position that he remedied the alleged violations to the best of his ability, which he could not have done if he did not even understand what violations were being charged. Plaintiff also argues that the Notice and Orders

---

[5]The City contends that Plaintiff's reliance on Alameda Municipal Code § 13-12 is misplaced, because the Notice and Orders were issued pursuant to § 13-13. However, the Notice and Orders appear to have been issued pursuant to Section 13-9. See Pl.'s Ex. 1, 14.

16

were recorded improperly and that the City obtained the warrant to search the property in 2007 under "false pretenses," the warrant does not have a number on it, and the warrant was not returned to the judge who signed it. However, Plaintiff does not explain how any of these alleged procedural irregularities impacted him or constitute a compensable taking.

Because Plaintiff failed to exhaust his administrative remedies, the property admittedly constituted a nuisance per se under Alameda law, and thus there was no regulatory taking, Plaintiff's sole claim for inverse condemnation fails as a matter of law. Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: June 25, 2012

*[signature]*
ELIZABETH D. LAPORTE
United States Magistrate Judge

17